366 S.E.2d 726

Ransford JONES, Bazil Bailey, Anthony Williams, Oral Reid, Delroy Hunter and Eric C. Campbell

v.

TRI–COUNTY GROWERS, INC.

No. 18140.

Supreme Court of Appeals of West Virginia.

Feb. 23, 1988.

Garry G. Geffert, Martinsburg, Joseph P. Henry, Charleston, for appellants.

Clarence E. Martin, Susan R. Snowden, Martin & Seibert, Martinsburg, for appellee.

NEELY, Justice:

The West Virginia apple harvest season extends for a period of approximately six weeks beginning in September of each year. It is essential that apple growers have an adequate work force to pick the harvest. Historically, West Virginia orchardists have been unable to recruit sufficient workers to harvest their crop. An employer who anticipates a labor shortage of local workers may request temporary labor certification for foreign workers. Because the importation of foreign workers from countries with depressed economies would, in the absence of controls, depress the wages and working conditions of domestic workers, employers using temporary foreign workers must comply with comprehensive regulations governing the minimum terms of employment that must be offered and adhered to by the employer. 20 C.F.R. § 655.200, *et seq.* (1978).[1] Among these is the requirement that the employer comply with all federal and state laws relating to employment. 20 C.F.R. § 655.203(b) (1978).[2]

Each year the appellee, Tri–County Growers, Inc., has obtained permission to employ foreign workers to harvest the West Virginia apple crop. Pursuant to the authority of the certification, Tri–County Growers, Inc. has traditionally entered into a "master contract"; this contract is a three party agreement among between Tri–County Growers, Inc., the workers, and Mr. H.F. Edwards, who is the agent of the government of Jamaica. In addition to this master contract, each of the workers entered into an individual contract with Jamaica and Tri–County Growers, Inc.

Pursuant to the terms of the master contract executed with Tri–County Growers, Inc., certain sums were withheld from all workers' wages. Section 6(a)(i)[3] of the master contract required three percent of wages to be paid to the Jamaican government agent as premiums for insurance or other expenses.[4] Section 6(a)(ii)[5] of the

1. Section 101(a)(15)(H)(ii) of the Immigration and Nationality Act of 1952, permits the admission of foreign workers when sufficient domestic workers are unavailable. Pursuant to section 214(c) of the Act, 8 U.S.C. § 1184(c) (1980), the Attorney General of the United States is responsible for determining whether domestic workers are available. The Attorney General has delegated this authority to the Secretary of the Department of Immigration. Pursuant to 8 C.F.R. § 214.2(h)(3), the Secretary of Immigration and Naturalization requires applicants seeking admission of temporary agricultural labor to seek certification from the United States Department of Labor regarding the unavailability of sufficient domestic workers.

The Secretary of the Department of Labor has promulgated regulations setting forth the standards by which he will determine whether a sufficient number of qualified domestic workers are available. 20 C.F.R. § 602.1 (1978). This regulation requires that an employer may obtain certification only if he has been unable to recruit a sufficient number of qualified domestic workers through his own recruitment efforts and those of the Interstate Clearance System that is administered by the Department of Labor under the Wagner–Peyser Act 29 U.S.C. § 49 *et seq.* (1949). The Interstate Clearance System is designed to alleviate labor shortages by permitting employers who anticipate shortages to use the services of the Department of Labor and affiliated state employment agencies to locate and recruit qualified domestic workers. 20 C.F.R. § 602.1–602.22 (1978)

2. In 1980 and 1981, as a condition of obtaining certification to employ foreign workers, appellee signed an assurance that:
    "During the period for which the temporary labor certification is granted, the employer will comply with applicable Federal, State and local employment-related health and safety laws."
    20 C.F.R. § 655.203(b) (1978).

3. Clause 6(a) of the contract states:
    "During the continuance of the Workers' employment hereunder, the employer shall deduct from the wages due to the workers in respect of each payroll period:
    (i) a sum equivalent to 3% thereof (or such lesser percentage thereof as the government's agent may at any time direct) for the purpose of being applied in accordance with subclause (a) of Clause 8.
    (ii) the cost of meals provided by the employer for the worker in accordance with subclause (f) of clause 5 of this Agreement, at rates not exceeding the rates specified in that subclause."

4. Clause 8(a) of the contract states:
    "The Government's Agent shall apply every sum remitted to him by the employer in accordance with Subclause (a)(i) of Clause 6 of this Agreement to a fund which he shall utilize for the purpose of defraying:
    (i) the premiums on any life or other insurance which he may effect on behalf of the worker

5. See note 5 on page 220.

contract allowed for the deduction of the cost of meals supplied by Tri–County Growers, Inc. which was stipulated in the contract as $5.00 per day.[6] Pursuant to section 6(b) deductions were made for costs advanced by the employer for transportation.[7] Finally, pursuant to section 7 of the master contract, the workers specifically authorized the employer to deduct twenty-three percent of each worker's wages remaining after the deductions authorized in section 6 and to pay this sum to the Jamaican government's agent who, under section 11 of the contract, was to use that money to pay certain expenses.[8]

The functions of these withholdings were to: (1) reimburse the employer for expenses incurred upon a worker's not returning to Jamaica at the conclusion of the contract; (2) secure expenses of repatriation, including return transportation costs; (3) repay transportation advances; (4) repay the Jamaican government for any sums advanced to the workers; and (5) provide insurance.

Pursuant to the master contract in years 1980 and 1981, the appellants entered the United States and harvested apples for Tri-County Growers. Sums were deducted from the wages of each appellant as authorized by the contract. Twenty-three percent of each appellant's gross wages were withheld as savings pursuant to Clause 7. Two percent of gross wages were withheld for unspecified insurance pursuant to Clause 6(a) of the contract. In addition, five dollars per day was withheld for board pursuant to Clause 6(a)(ii), and certain sums were withheld by the appellee and paid to a third party as reimbursement for each appellant's costs of traveling to West Virginia, pursuant to Clause 6(b). No wage withholding authorization or assignments, however, were executed by any of the appellants pursuant to *W. Va. Code*, 21–5–3 [1979]. In addition, the master contract bears no signature of any appellant and does not purport to have an acknowledgement of any signature.

In July 1984, the appellants filed an action in the Circuit Court of Berkeley County to enforce the restrictions on the assignment of wages and for damages under the West Virginia Wage Payment and Collection Act, *W. Va. Code*, 21–5–3 [1979]. Appellants alleged that the withholding of their wages, albeit proper under the master contract, violated the Wage Payment and Collection Act because appellees did not comply with statutory requirements.

> (ii) in his absolute discretion any extraordinary expenses reasonably incurred on behalf of the worker in any emergency.

**5.** See, *supra* note 3.

**6.** Section 5(f) of the contract provides:
> "The employer shall provide such living quarters for the worker as are in accordance with the pertinent Federal and State Regulations and such meals for the worker as may be required or approved by the Government Agent, such living quarters to be provided without cost to the worker and if the worker prepares his own meals, he shall be furnished, without cost, cooking utensils and cooking facilities; and the cost to the worker of any such meals provided shall not exceed the actual cost to the employer for providing the same or $5.00 plus tax, per day, whichever is less."

**7.** Clause 6(b) asserts: "Where the wage due to the worker in respect of any payroll period exceeds stipulated minimum earnings, the employer may deduct any amount advanced for transportation and subsistence expenses under subclause (a) of clause 5 in the following manner:

> (i) if the wage exceeds the stipulated earnings, but does not exceed $50.00, by deducting from such excess a sum up to $14.00;
> (ii) if the wage exceeds $50.00 by deducting therefrom a sum of $14.00 plus 25% of the amount by which the wage exceeds $50.00."

**8.** Clause 7 of the master contract states:
*Assignment of Wages by Worker:*
> "The worker hereby authorizes and directs the employer after deducting the sums specified in Clause 6 of this Agreement to pay directly to the Government's Agent, from the balance, if any, of the total wages of the worker during such payroll period, a sum equal to 23% of such total wage, and to transmit same together with payrolls to the Government's Agent at such place or places as the Government's Agent may direct, to be applied in accordance with Subclause (b) of Clause 8 of this Agreement, provided, however, the Government's Agent may upon giving reasonable notice to the employer require the employer to discontinue making the aforesaid payments or may require him to increase or decrease such payments by such percentage as the Government's Agency may specify."

The appellants moved for summary judgment, but the circuit court denied the motion and dismissed the action. The court held that the employment contract was in "substantial compliance" with the terms of the Wage Payment and Collection Act and that appellants' cause of action was governed by the tort statute of limitations. *W.Va.Code*, 55–2–12 [1959].

The appellants now assert that the circuit court erred in applying the tort statute of limitations because their cause of action is governed by the five year contract statute of limitations. *W.Va.Code*, 55–2–6 [1923]. Appellants also assert that any assignment of wages that does not meet the formalities of the West Virginia Wage Payment and Collection Act is invalid and that the circuit court erred when he held that "substantial compliance" with the Wage Payment and Collection Act is sufficient. We agree with appellants and reverse.

## I

Before addressing the substantive issue in this case, we must first address two procedural issues. First, appellees assert that the validity of the contract is the issue before us, and because Jamaica is the situs of the contract's formation, the law governing this contract is Jamaican law. We disagree.

The parties concede that the contract was executed in Jamaica. However, there is no ambiguity in the terms of the contract itself. Rather, the issue is whether application of the provisions of the contract are contrary to *W.Va.Code*, 21–5–3 [1979]. It is also clear that performance of the contract was to take place in the State of West Virginia. "Matters bearing on the performance of a contract are determined by the law of the place in which the contract was to be performed." *Scudder v. Union National Bank*, 91 U.S. (1 Otto) 406, 23 L.Ed. 245 (1875); *See also Tow v. Miners Memorial Hospital Association, Inc.*, 199 F.Supp. 926 (S.D.W.Va.1961), *affirmed* 305 F.2d 73 (4th Cir.1962); *Kolendo v. Jerell, Inc.*, 489 F.Supp. 983 (S.D.Va.1980).

■ Although it is clear that contracts are governed by the law of the jurisdiction where the contract is made, performance in another state that violates that state's public policy does not become lawful simply because it arises under a contract made elsewhere. When matters of public policy are involved, such as authorized wage withholdings, the law of the state where the contract is to be performed governs. *Poling v. Poling*, 116 W.Va. 187, 179 S.E. 604 (1935); *Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 281 S.E.2d 238 (1981); *Clendenin Lumber and Supply Co. v. Carpenter*, 172 W.Va. 375, 305 S.E.2d 332 (1983).[9]

## II

Appellees also assert that we need not rule on any substantive issue because this cause of action sounds in tort and appellants did not file their complaint within the two year statute of limitations for tort actions under *W.Va.Code*, 55–2–12 [1959]. The circuit court agreed with the appellees and held that the appellants' injury, if any, sounded in tort.

■ However, this court has consistently held that suits brought under the West Virginia Wage Payment and Collection Act are governed by the five year statute of limitations for contract actions. *Western v. Buffalo Mining Co.*, 162 W.Va. 543, 251 S.E.2d 501 (1979); *Lucas v. Moore*, 172 W.Va. 101, 303 S.E.2d 739 (1983). In *Western, supra*, we ruled that "a suit by employees for recovery of money allegedly obtained under a wage assignment that

9. Related to this conflicts of law issue is appellee's assertion that the Act of State Doctrine precludes any state court from ruling on the validity of the contract, because its terms were dictated by a public act of the Government of Jamaica. However, the Act of State Doctrine does not apply to a contract between a foreign government and a domestic corporation if the contract requires a violation of the public policy of the state where the contract is to be performed. *See, Alfred Dunhill of London, Inc. v. Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976), *Menendez v. Saks & Company*, 485 F.2d 1355 (2d Cir.1973) *cert. denied*, 425 U.S. 991, 96 S.Ct. 2201, 48 L.Ed.2d 815 (1976); *Dominicus Americana Bohio v. Gulf & Western Industries, Inc.*, 473 F.Supp. 680 (S.D.N.Y.1979).

violates *W.Va.Code,* 21–5–3 is one based on contract and the five year statute of limitations provided for in *W.Va.Code,* 55–2–6 is applicable." 162 W.Va. at 545, 251 S.E.2d at 502. Because the complaint at issue in this case was filed in 1984, and the earliest claims occurred in 1980, the appellants' cause of action fits within the five year statute of limitations under *W.Va.Code,* 55–2–6 [1923].

### III

Finally, we turn to the substantive issue presented. Did the circuit court err when he held that appellants' assignment of wages were in "substantial compliance" with the requirements of the West Virginia Wage Payment and Collection Act, *W.Va. Code,* 21–5–3 [1979]? Appellants assert that any assignment of wages that does not meet all the formalities mandated by the Act is invalid.

■ "The West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." *Mullins v. Venable,* 171 W.Va. 92, 297 S.E.2d 866 (1982). *See also, Farley v. Zapata Coal Corp., supra.* The legislative history of *W.Va.Code,* 21–5–3 [1979] shows a clear intent to restrict the right to assign wages. These restrictions first appeared in 1937. The proviso that had been in the *W.Va.Code* since 1887 allowing assignment of "the whole or any part of the wages," was changed to allow the assignment of only "part" of the workers' wages. *W.Va.Code,* Article 5 § 2352 [1937]. The 1937 *Code* amendments limited the "part" of wages that could be assigned to one-fourth of any paycheck, and also specified the conditions under which assignments could be made:

"No assignment of or order for future wages shall be valid for a period exceeding one year from the date of such assignment or order. Such assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgements, and such order or assignment shall specify thereon the total amount due and collectible by virtue of

the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided further, that no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof is endorsed thereon: Provided further, that nothing herein contained shall be construed as affecting as the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees."

*W.Va.Code,* Article 5 § 2353 [1937]. The requirements for assignments added in 1937 are those that are today contained in *W.Va.Code,* 21–5–3 [1979].

In 1975, the wage protection provisions were rewritten and recodified as the Wage Payment and Collection Act 21–5–1 *et seq.* The Legislature also added a major protective section declaring the waiver or attempted waiver of the provisions of the Act void as a matter of public policy. *W.Va. Code,* 21–5–10 [1975] provides:

"Except as provided in section thirteen [§ 21–5–13], no provision of this article may in any way be contravened or set aside by private agreement, and the acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void."

■ The history of the *Code* provisions on wage assignments shows a deliberate, legislative intent to allow assignment of wages if, and only if, certain specified conditions are met. From the initial provisions allowing unfettered assignment of wages, the legislature has changed the law of West Virginia to permit only limited assignments, and then only when clearly defined legislative formalities are observed. Based on the legislative history of the Wage Payment and Collection Act, we hold that compliance with *all* requirements of the Act is mandatory when assigning an employee's wages. We, therefore, reverse the circuit

court's holding that substantial compliance with the Act was sufficient.

We followed what we believe was the legislative mandate in *Clendenin Lumber & Supply Co. v. Carpenter*, 172 W.Va. 375, 305 S.E.2d 332, 338 (1983) where we set out the criteria for compliance with the act:

> "W.Va.Code 21–5–3 [1979] specifies the requirements of a valid assignment of wages in West Virginia. It provides that to be valid, such assignment shall (1) not extend beyond one year from the date of any assignment or order, (2) be notarized, (3) specify the total amount due, (4) state upon its face that three fourths of the 'personal earnings and wages' are exempt from assignment, and (5) contain the written acceptance of the assignor's employer."

172 W.Va. at 381, 305 S.E.2d at 338. Because the assignment at issue in *Clendenin* did not contain any of the five requirements, we held the assignment to be invalid and unenforceable.

Similarly, in the case before us, Tri–County Growers offers no evidence of compliance with any of the requirements of the Act. There is no documentation of the assignments beyond the master contract. The contract language is vague and does not specify the total amount to be assigned. Clearly, the legislative intent of the Wage Payment and Collection Act was to exact strict compliance with the Act's requirements. Therefore, the appellee violated the terms and conditions of *W.Va.Code*, 21–5–3 [1979].

Appellee asserts that strict adherence to the Act was not required because agreement to the withholdings was a condition precedent to employment; the assignment was not executed after employment began. However, the Act permits no such distinction. To allow assignments without compliance with the statutory requirements would permit waivers of the terms of the Act. Waivers of any provision of the Act are specifically prohibited. *W.Va.Code*, 21–5–10 [1979].

Accordingly, the judgment of the circuit court is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.