406 S.E.2d 752

**Calvin GOODWIN, Dwight M. Cook, Charles Goodwin, Norman F. Hopkins, Jr., David E. Lovins and Mark David May, Plaintiffs Below, Appellants,**

v.

**Bill WILLARD, Earl Morgan, Defendants Below,**

**and**

**Alan Lively, Defendant Below, Appellee.**

**No. 19799.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

June 28, 1991.

Bradley J. Pyles, Joan G. Hill, Crandall & Pyles, Logan, for appellants.

Bernard L. Spaulding, Logan, for appellee.

PER CURIAM:

This is an appeal from an order entered in the Circuit Court of Logan County granting the motion to dismiss and motion for summary judgment filed by the appellee, Alan Lively, on the grounds that the action filed against the appellee was subject to a one-year statute of limitations, and that no agency relationship existed between the appellee and Seminole Coal Incorporated as a matter of law. The appellants, Calvin Goodwin, et al., contend that actions brought under the Wage Payment and Collection Act are governed by the five-year contract statute of limitations, and that the question of whether an agency relationship existed between the appellee and Seminole Coal Incorporated is one of fact for the jury. We agree, and we reverse the decision of the circuit court.

In the early summer of 1984, Bill Willard, Earl Morgan and Alan Lively obtained a $50,000 loan to establish a coal mining business known as Seminole Coal Incorporated (hereinafter "Seminole"). The articles of incorporation of Seminole were filed on August 15, 1984, and the total authorized capital stock of that corporation was $50,000, which was divided into 100 shares. Mr. Lively owned 33 shares of stock. Seminole also obtained a permit to engage in surface mining operations effective August 1, 1984.

Calvin Goodwin entered into an employment agreement with Seminole in August of 1984. He worked as a chief electrician for Seminole until he was fired on April 21, 1985. At the time Mr. Goodwin was fired, he was owed certain wages and fringe benefits.

On January 15, 1986, Mr. Goodwin initiated an action to recover his unpaid wages and fringe benefits against Bill Willard, Earl Morgan and Alan Lively, individually, pursuant to the Wage Payment and Collection Act, *W.Va.Code*, 21–5–1 through 21–5–16 (1985).[1] The complaint was later amended to include other employees of Seminole who had also been laid off without receiving all wages and benefits owed to them.

Mr. Morgan and Mr. Willard never answered the complaint filed against them nor did they make any appearance in the action. The circuit court therefore entered a default judgment against them.[2] The appellee subsequently filed a motion to dismiss the complaint on the ground that the applicable statute of limitations had expired. The appellee also filed a motion for summary judgment as to all claims against him on the ground that there were no questions of fact for a jury to decide. By order entered on January 5, 1990, the circuit court granted the appellee's motion. It is from that order that the appellants now appeal.

I

The appellants first contend that the circuit court erred in ruling that the statute of limitations for this action is one year. The appellants maintain that the five-year statute of limitations for contract actions applies to actions initiated to recover wages and fringe benefits under the Wage Payment and Collection Act. The appellee maintains that the five-year statute of limitations does not apply to the present case.

The record reveals that each of the appellants in this case were employed by Seminole to work at the coal mine in exchange for certain wages and benefits. The employees of the coal mine were represented

---

1. Ralph Grimmett and his heirs were also named as defendants to the suit as the owners and lessors of the land on which Seminole's mine was located. They were later dismissed as plaintiffs.

Seminole was not named as a defendant to the suit because it was the subject of bankruptcy proceedings.

2. The appellants indicate in their brief that Mr. Morgan filed for bankruptcy, and Mr. Willard, at some point, was incarcerated.

**324**

by the United Mine Workers of America, and it appears that the coal mine was unionized.[3] After working in Seminole's coal mining operations, the appellants were laid off without being paid all of the wages and fringe benefits owed to them. Calvin Goodwin then initiated this action to recover those wages and fringe benefits owed to him under the Wage Payment and Collection Act, *W. Va. Code*, 21–5–1 through 21–5–16 (1985), within one year after the cause of action arose. The other appellants did not join in the action until nearly three years after they were laid off.

Under the pertinent provisions of *W. Va. Code*, 21–5–4(d) [1975], "when an employee for any reason whatsoever is laid off, the person, firm or corporation shall pay in full to such employee not later than the next regular payday, ..., wages earned at the time of suspension or layoff." *W. Va. Code*, 21–5–4(e) [1975] further provides that:

If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, that he shall cease to draw such wages thirty days after such default.

We identified the applicable statute of limitations to suits brought to recover unpaid wages and benefits in the syllabus of *Lucas v. Moore*, 172 W.Va. 101, 303 S.E.2d 739 (1983):

*W. Va. Code*, 21–5–4(e) [1975] contemplates that employees shall have rights and remedies under the statute as if still under contract with their employers, and actions brought under this provision are therefore subject to the five year statute of limitations for contract, *W. Va. Code*, 55–2–6 [1923], and not the one year statute of limitations for a civil penalty, *W. Va. Code*, 55–2–12(c) [1959].

We have also held that actions by employees for recovery of money under a wage assignment that violates *W. Va. Code*, 21–5–3 [1979] is also based on contract and subject to the five year statute of limitations provided for in *W. Va. Code*, 55–2–6 [1923]. *Jones v. Tri–County Growers, Inc.*, 179 W.Va. 218, 366 S.E.2d 726 (1988); *Western v. Buffalo Mining Co.*, 162 W.Va. 543, 251 S.E.2d 501 (1979). Moreover, we specifically stated in *Jones* that "this court has consistently held that suits brought under the West Virginia Wage Payment and Collection Act are governed by the five-year statute of limitations for contract actions." 179 W.Va. at 221, 366 S.E.2d at 729. (citations omitted).

From the record before us, we find that the initial complaint was filed by Mr. Goodwin within one year after his cause of action arose. Furthermore, the complaint was amended to include the other appellants within the five-year statute of limitations under *W. Va. Code*, 55–2–6 [1923]. We conclude, therefore, that the circuit court erred in ruling that a one-year statute of limitations applied to this case.

## II

Next the appellants contend that the trial court erred in ruling, as a matter of law, that the appellee was not an officer or agent in the management of Seminole within the meaning of *W. Va. Code*, 21–5–1(h) [1981]. The appellee maintains that there was no evidence which would have enabled a jury to find that Seminole had authorized the appellee to act in its management.

The evidence before us consists primarily of depositions. Charles Goodwin, the original plaintiff in this proceeding, testified that the appellee frequently visited the coal mine to check on the mining operations, and that the appellee had told him he was one of the owners of Seminole. According to Mr. Goodwin, the appellee would attend meetings with some of the employees

---

**3.** The appellants have asserted that the terms and conditions of their employment were governed by the National Bituminous Coal Wage Agreement. David Lovins, one of the appellants, testified at a deposition that Seminole was a signatory to the United Mine Workers contract.

where he would discuss their wages, inquire about equipment they needed for the mining operations, and recommend methods they could use to "run better coal." Mr. Goodwin also testified that the appellee promised to pay the employees the wages they were owed.[4] Mr. Goodwin also stated that the appellee provided supplies to the mining operations and purchased equipment, such as a Long Airdox Pinner which was worth approximately two to three hundred thousand dollars.[5]

The deposition of Charles Goodwin was also taken. Mr. Goodwin testified that the appellee would bring parts and supplies to the mine and would sometimes help the employees move equipment. Mr. Goodwin also confirmed that he was present at a meeting with the appellee in which the appellee discussed the mining operations.[6] Mr. Goodwin also testified that the appellee had promised to pay the employee's wages when they "started running coal."[7]

David Lovins, another appellant in this case, also testified that the appellee promised to pay him. Mr. Lovins stated that, at one point, the appellee paid him some of his wages and promised to pay him the remaining amount once they obtained the coal.

Another appellant, Mark David May, testified that the appellee would bring supplies and oil to the mining operations, and would help him "shoot coal."[8] Mr. May also stated that the appellee told the employees that if they continued working, he would pay them their wages in full once they "got to the solid coal[.]"

The appellee testified that he was an investor in Seminole and was co-guarantor on a loan for $50,000. The appellee owned 33% of Seminole's stock. The appellee stated that he would visit the mine site "[j]ust to see what was going on." He testified that Bill Willard would call him when he either needed supplies or to drop off equipment at the appellee's gas station. The

---

**4.** Mr. Goodwin testified that he asked the appellee about his wages on several occasions. Mr. Goodwin responded to the following questions:

Q. Who promised to pay you?
A. Alan Lively promised.
Q. What did he say?
A. Like I told you a while ago, he said, boys when you get on the coal, in the coal, your money will be there, don't worry about it. We got in the coal, we run coal, we never was paid.
Q. But Alan Lively never promised to pay you himself did he?
A. He said he would pay us.
Q. No, he said the money would be there, didn't he?
A. He said he would pay us.
Q. Oh, he said exactly, he would pay us; is that right?
A. He said that.
Q. Personally; is that right?
A. He said he would pay us.

**5.** Mr. Goodwin also testified that there was an occasion when the bookkeeper was not authorized to write checks without the appellee's approval. Mr. Goodwin stated: "Yes, a lot of times we needed supplies, we needed something and the only way that we could get a check from the bookkeeper was Alan Lively okayed it."

**6.** Mr. Goodwin gave the following description of the meeting with the appellee:

Q. Did you have any knowledge after that meeting as to what Alan Lively's position in the corporation was?
A. I don't know, he done all the talking.

Q. Who did all the talking?
A. Alan.
Q. Do you know if he was a stockholder?
A. I assumed he was. He was talking about the pinner and stuff he was helping us get, the belt line, he helped get it.

**7.** According to Mr. Goodwin, the appellee also promised to pay the back wages owed to the employees:

Q. Was there any promises made to you by Alan Lively that you would be paid your wages?
A. Yes, they were.
Q. How often?
A. He said when we started running coal that he would back up and pay us our wages we was owed.
Q. Back up and pay, were you already owed wages at that time?
A. Yes.

**8.** Mr. May explained how the appellant would help him "shoot coal":

A. He would help me take the dynamite up there and put it in place, wire it up and come back and take his gloves off, wire the shot cord to the battery and after everyone was in the clear, he would set it off.
Q. And he would do the shooting?
A. He had done the shooting.
Q. I said, would he do the shooting in your presence?
A. Yes, he would.

appellee also acknowledged that he personally paid for some of these supplies on occasion. The appellee also admitted to going underground to "shoot coal." He further disclosed that he acquired a Long Airdox Pinning machine for the mining operations. The appellee stated that he lost approximately $70,000 as a result of his investment in Seminole.

The appellants argue that the appellee was an agent in the management of Seminole who knowingly permitted the corporation to violate the provisions of the Wage Payment and Collection Act. The appellants argue, citing *Mullins v. Venable,* 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982), that the legislature recognized that corporations act through persons and that those persons must ultimately be responsible for the actions of the corporation.

We recognized that a cause of action may arise against a corporate officer who knowingly permits the corporation to violate the provisions of the Wage Payment and Collection Act in syllabus point 1 of *Mullins v. Venable, supra:*

> An officer in the management of a corporation who knowingly permits the corporation to violate the provisions of the Wage Payment and Collection Act, W.Va.Code, §§ 21–5–1 through 21–5–16 (1981 Replacement Vol.), may be held personally liable for unpaid wages, fringe benefits, and liquidated damages under W.Va.Code, § 21–5–4.

The term "officer" is broadly defined in *W.Va.Code,* 21–5–1(h) [1981]: "The term 'officer' shall include officers or *agents* in the management of a corporation or firm, who knowingly permits the corporation or firm to violate the provisions of this article." (emphasis added). The appellants rely on this definition to support their assertion that the appellee was an agent in the management of Seminole who knowingly permitted the corporation to violate the Act, and is therefore liable for their unpaid wages and benefits.

■ The question of whether an agency exists is ordinarily a question of fact as we pointed out in syllabus point 2 of *Laslo v.*

*Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958):

> When the evidence is conflicting the questions whether the relation of principal and agent existed and, if so, whether the agent acted within the scope of his authority and in behalf of his principal are questions for the jury.

*See also* syllabus, *Cremeans v. Maynard,* 162 W.Va. 74, 246 S.E.2d 253 (1978). *See generally* 3 Am.Jur.2d Agency § 21 (1986); 2A C.J.S. Agency § 36 (1972).

■ There appears to be conflicting evidence as to whether the appellee was acting as an agent for Seminole. Although the appellee denies that he acted in any capacity as an agent or officer of Seminole, there is evidence which indicates that the appellee held meetings with the employees where he discussed the coal operations and promised to pay their wages. There is also evidence that the appellee purchased and delivered supplies to the mine, acquired equipment for the mining operations and visited the mine on occasion to oversee the operations. Although the appellee is not listed as an officer of Seminole in the articles of incorporation, his active participation in the business and his representations to the employees raise a factual question as to whether he was acting as an agent in the management of the corporation. Therefore, we conclude that the circuit court erred in ruling that the appellee was not, as a matter of law, an agent in the management of the corporation.

■ A motion for summary judgment should only be granted when it is clear that no genuine issue of material fact exists as we stated in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." We pointed out in *Aetna Casualty* that "[a] party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and

show affirmatively that the adverse party can not prevail under any circumstances." *Id.* at 171, 133 S.E.2d at 777. *See also Smith v. Buege,* 182 W.Va. 204, 387 S.E.2d 109 (1989); *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987).

█ Since a factual question exists as to whether the appellee acted as an agent in the management of the corporation, we find that the circuit court erred in granting summary judgment. Thus, for the reasons set forth herein, we conclude that the order of the Circuit Court of Logan County should be reversed and this case should be remanded for further proceedings.

Reversed.