**FILED**

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**MARY ZERFOSS,**
**Plaintiff below, Petitioner,**

**vs.)  No. 19-1126** (Pendleton County 17-C-7)

**HINKLE TRUCKING, INC. and GARY HINKLE,**
**Defendants below, Respondents.**

**MEMORANDUM DECISION**

The petitioner (plaintiff below) Mary Zerfoss appeals following an adverse jury verdict and the circuit court's November 19, 2019, order denying her motion for a new trial. The petitioner alleges that her former employer, the respondents (defendants below) Hinkle Trucking, Inc. and its owner Gary Hinkle,[1] violated the West Virginia Wage Payment and Collection Act ("WPCA")[2] and breached her employment contract by failing to pay her an agreed-upon rate of pay.[3] On appeal, the petitioner argues the circuit court erroneously prevented the jury from hearing that the respondents violated the WPCA by not specifying her rate of pay in writing at the time of her hire, and the circuit court wrongly concluded that liquidated damages were not available for her WPCA claim. She also contends that the circuit court erroneously sanctioned her for halting her discovery deposition. The respondents argue in support of the circuit court's rulings.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order denying a new trial is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] The petitioner is represented by attorneys Lonnie C. Simmons, Harley O. Staggers, Lia DiTrapano Fairless, and L. Tom Price. The respondents are represented by attorneys Julie A. Moore, Jerry D. Moore, and Jared T. Moore.

[2] W. Va. Code §§ 21-5-1 to -18.

[3] The petitioner's Complaint also asserted a count of gender discrimination pursuant to the West Virginia Human Rights Act. After discovery and briefing, the circuit court granted summary judgment for the respondents on this claim. The petitioner's brief to this Court asserted error regarding this summary judgment order, but during oral argument the petitioner's counsel announced that, after further review, his client was abandoning the appeal of the discrimination claim. Accordingly, the discrimination issue is not addressed in this decision.

1

## I. Facts and Procedural Background

The petitioner was hired as a commercial truck driver at Hinkle Trucking in February 2011. She worked there until January 29, 2014, when she resigned to work for a different employer. Two months later, on March 31, 2014, she was rehired at Hinkle Trucking under the same terms as her previous employment. She remained employed until January 21, 2016, when she again resigned.

The petitioner filed the underlying civil action against Hinkle Trucking, Gary Hinkle, and Travis Hinkle[4] on March 31, 2017. With regard to her WPCA and breach of contract claims, she asserted that she was not paid all of the wages owed to her.[5] She sought the recovery of unpaid wages, statutory liquidated damages, punitive damages, attorney's fees, and interest. At the center of this dispute was the parties' disagreement over the rate of the petitioner's pay.

When she was hired, the petitioner's rate of pay was not set forth in writing as required by the WPCA at West Virginia Code § 21-5-9(1) (1975).[6] The petitioner asserts that she was verbally promised twenty-five percent of the gross price paid to the respondents on each load that she hauled. However, the respondents assert that during the interview process, respondent Mr. Hinkle informed the petitioner that she would be paid a certain dollar amount for each ton of material she hauled to a customer's requested destination, but the specific amount would vary for the different customers and different destinations.

During discovery, the respondents' counsel deposed the petitioner on January 9, 2018. The petitioner arrived at the deposition earlier than her lawyer, with two notebooks in her possession. As the petitioner waited for the deposition to begin, she was observed reviewing the contents of the notebooks. During the deposition, the respondents' counsel asked whether she had reviewed any documents to help refresh her memory about the case. When the petitioner answered "no," the respondents' counsel asked if she had reviewed the notebooks. Her lawyer objected and summarily asserted that the information in the notebooks was protected by the attorney-client privilege. The respondents' counsel then asked the petitioner if she had written the information in the notebooks, to which she answered "yes." The respondents' counsel queried, "[w]ithout telling me what information you wrote down, was the information in those notebooks communicated to you by your attorney?" and "[w]here did the information come from that you wrote down in your notebooks?" The petitioner's counsel objected to these questions and did not permit the petitioner

---

[4] Claims against Travis Hinkle, who is the son of respondent Gary Hinkle, are not at issue in this appeal.

[5] West Virginia Code § 21-5-3(a) (2015) provides, in part, that "[e]very person, firm or corporation doing business in this state . . . shall settle with its employees at least twice every month . . . and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services." The 2015 version of subsection 3(a) is quoted here because it was in effect during the petitioner's employment, but earlier and subsequent versions are substantially the same.

[6] West Virginia Code § 21-5-9 provides, in part, that "[e]very person, firm and corporation shall: (1) Notify his employees in writing, at the time of hiring of the rate of pay[.]"

2

to answer. The respondents' counsel then asked the petitioner whether the notebooks contained "information intended to go to your attorney?" The petitioner's counsel again objected, restating that the notebooks contained privileged communications. When the respondents' counsel attempted to further question the petitioner, her lawyer unilaterally halted the deposition. The respondents' counsel indicated that he was not finished with the deposition, but the petitioner and her lawyer departed.

On February 14, 2018, the respondents electronically filed a "Motion for Rule 37 Sanctions for Improper Unilateral Termination of Plaintiff's [Petitioner's] Deposition."[7] The next day, February 15, 2018, the petitioner filed a "Motion for a Rule 30(d)(3) Order" to halt her deposition.[8] In an order entered March 9, 2018, the circuit court granted the respondents' motion and denied the petitioner's motion. The court ordered the petitioner to surrender her notebooks to a discovery commissioner for an *in camera* determination of whether they were protected by the attorney-client privilege and, upon the conclusion of that review, ordered that the deposition would resume. The court ordered the petitioner and/or her lawyer Mr. Staggers to pay the respondent's reasonable attorney's fees and costs and the court reporter's costs.

After reviewing the notebooks, the discovery commissioner concluded that the contents were prepared by the petitioner for purposes of memorializing issues to be discussed with her counsel and thus were protected by the attorney-client privilege. The discovery commissioner also deemed the discovery dispute to have been in good faith. By order of April 27, 2018, the circuit court accepted the discovery commissioner's recommendation regarding the protected nature of the notebooks, but it disagreed that the dispute had been in good faith. After reading the transcript and watching the video of the petitioner's deposition, the court found that

---

[7] Rule 37(a)(2) of the West Virginia Rules of Civil Procedure provides, in part, that "if a deponent fails to answer a question propounded . . . the discovering party may move for an order compelling an answer[.]" Rule 37(a)(4)(A) provides that

> [i]f the motion is granted, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the motion was filed without the movants first making a good faith effort to obtain the discovery without court action, or that the opposing party's answer, response, or object was substantially justified, or that other circumstances make an award of expenses unjust.

[8] Rule 30(d)(3) of the West Virginia Rules of Civil Procedure provides, in part, that

> [a]t any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court . . . may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c).

[respondents'] counsel was properly questioning [petitioner] to explore whether a privilege existed with respect to the information contained in her notebooks and, if so, whether such privilege was waived when [petitioner] reviewed the notebooks in anticipation of her deposition while waiting for her attorney to arrive. [Respondents'] counsel did not ask questions about the contents of the notebooks. [Petitioner's] counsel would not allow inquiry to establish a record regarding the facts and circumstances surrounding the creation of the information contained in [petitioner's] notebooks. Then, [petitioner's] counsel terminated the deposition. . . . The Court finds that if [petitioner's] counsel had allowed [respondents'] counsel to ask their proper questions, then this issue would not have necessitated the involvement of the Discovery Commissioner.

After considering the reasonableness of the respondents' fee request, the court ordered the petitioner and/or her counsel to pay the respondents' counsel $3,217.15 in fees and costs. The court also ordered the petitioner and/or her counsel to pay $1,239.25 in court reporter appearance fees for the terminated deposition, and $421.30 to compensate the discovery commissioner.

Leading up to trial, both sides filed various motions *in limine*. The petitioner filed a motion asking that she be allowed to offer evidence that her employment agreement was not reduced to writing in violation of West Virginia Code § 21-5-9(1).[9] The circuit court ruled that it was proper for the petitioner to introduce evidence that her employment terms were not reduced to writing, but the court prohibited her from offering testimony or argument that this violated West Virginia Code § 21-5-9(1). When this issue arose during trial, the court further explained this evidentiary ruling as follows:

[R]ecognizing that the agreement is not in writing, I have let you [petitioner] inquire, cross-examine, argue, everything except say that that is a violation of the Wage Pay[ment] and Collection Act under 21-5-9. And maybe I haven't explained it sufficiently enough in my mind where I'm coming from on it. But, to me, if you do a balancing test under [West Virginia Rules of Evidence] 401 and 403, that the prejudicial impact of explaining to a jury or trying to explain to the jury that, yes, they violated 21-5-9, even though that's just an administrative remedy,[10] and then

---

[9] *See supra*, n. 6.

[10] The circuit court prefaced this evidentiary ruling with a reference to a federal district court decision that found there is no private cause of action for a violation of West Virginia Code § 21-5-9(1). *See Byard v. Verizon W. Va., Inc.*, No. 1:11CV132, 2012 WL 1085775, *16-18 (N.D.W.Va. Mar. 30, 2012). The district court concluded that the only recourse for violation of this statute is to file an administrative complaint with the West Virginia Commissioner of Labor. *Id.* at *18. It is unnecessary for our Court to decide whether there is a private cause of action for the failure to set forth the terms of employment in writing at the time of hiring in violation of West

4

having them [the jury] still try to interpret what the contract is based on the evidence and what the—what the agreement was, what [the petitioner] says, what Travis [Hinkle] says, what [respondent] Gary [Hinkle] says would be impossible. It would not be fair to try to do that. That's where I'm coming from.

(Footnote added.) The petitioner also filed a motion *in limine* to prohibit the respondents from offering testimony regarding ambiguity in her employment agreement. The court denied the motion, concluding that "[i]nasmuch as this is a contractual dispute, the Court is going to allow both parties to testify to their belief of the verbal agreement regarding [petitioner's] rate of pay."

The respondents filed a motion *in limine* to prevent the jury from considering or awarding liquidated damages pursuant to the WPCA. The respondents argued that the petitioner's WPCA claim was brought pursuant to West Virginia Code § 21-5-3(a), which requires employers to settle with their employees at least twice every month, and not West Virginia Code § 21-5-4(b), which requires an employer to timely provide a final paycheck to an employee who resigns or is discharged. The respondents argued that pursuant to specific language in the WPCA, liquidated damages are available for violation of § 21-5-4(b) but *not* for violation of § 21-5-3(a). The circuit court agreed with the respondents, granted this motion *in limine*, and granted summary judgment to the respondents on the issue of liquidated damages.[11]

A jury trial was held on October 1 and 2, 2019. Both sides offered their evidence and argument regarding the petitioner's rate of pay and her claims. The jury found in favor of the respondents, concluding that they had not violated the WPCA or breached the petitioner's employment contract. Subsequently, the petitioner filed a motion for a new trial. Following a hearing, the circuit court denied the motion by order entered on November 19, 2019. In this appeal, the petitioner challenges the circuit court's adverse *in limine* rulings and the order denying her motion for a new trial.

## II. Standard of Review

When considering the appeal of a circuit court's order denying a new trial,

> [t]his Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

Virginia Code § 21-5-9(1) because, as the petitioner's counsel reaffirmed during oral argument, the petitioner did not assert a cause of action for this.

[11] The circuit court's ruling was based upon language in West Virginia Code § 21-5-4(e) allowing for the recovery of liquidated damages for violations "under this section." However, as explained *infra*, this Court is not deciding on the availability of liquidated damages for a violation of West Virginia Code § 21-5-3(a) because the issue is moot in this case.

5

Syl. Pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012), *superseded by statute on other grounds as recognized in Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 617, 803 S.E.2d 582, 587 (2017). We have also explained that

> [a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. Pt. 4, *Sanders v. Georgia-Pac. Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976). With these standards in mind, we consider the parties' arguments.

### III. Discussion

After abandoning the appeal of her gender discrimination claim,[12] the petitioner asserts three remaining assignments of error: the circuit court erroneously prevented the jury from hearing that the respondent's conduct violated West Virginia Code § 21-5-9(1); the circuit court erroneously found that liquidated damages were not available for the petitioner's WPCA claim; and the circuit court wrongly sanctioned the petitioner regarding the termination of her deposition. We will consider each of these issues in turn.

At trial, the petitioner was permitted to inform the jury, multiple times, that the amount of her pay at Hinkle Trucking was not set forth in writing when she was hired.[13] However, she was not allowed to indicate or argue that this failure violated West Virginia Code § 21-5-9(1).[14] The court's decision on this was an evidentiary ruling pursuant to the West Virginia Rules of Evidence, specifically, the balancing test of Rule 403. This rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*

A circuit court has significant discretion in the application of Rule 403. "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994); *accord* Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary

---

[12] *See supra*, n. 3.

[13] The respondents' brief points to the mention of the lack of a writing three times during the petitioner's opening statement; six times in the petitioner's direct testimony; twice during the testimony of Hinkle Trucking's payroll administrator; eight times in respondent Gary Hinkle's cross-examination; on cross-examination of Travis Hinkle; and on cross-examination of a Hinkle Trucking dispatcher.

[14] *See supra*, n. 6.

rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

Although it is undisputed that the petitioner's rate of pay was not reduced to writing at the time of hiring, the petitioner did not seek to pursue a separate cause of action for the violation of West Virginia Code § 21-5-9(1) and, to this Court's knowledge, did not file an administrative complaint with the Commissioner of Labor. When applying the balancing test, the circuit court was obviously concerned that if the jurors were told of this statutory violation, they would be confused and potentially misled into rendering a verdict solely upon this violation without holding the petitioner to her burden of proving the claims in her Complaint. In light of the specific facts and circumstances of this case, we conclude that the circuit court did not commit a clear abuse of discretion.

Turning to the next assignment of error, the petitioner challenges the circuit court's *in limine* ruling that statutory liquidated damages are not legally available for her particular WPCA claim.[15] The WPCA's liquidated damages statute, West Virginia Code § 21-5-4(e), provides that "[i]f a person, firm or corporation *fails to pay an employee wages* as required under this section, the person, firm or corporation, in addition to the amount which was unpaid when due, is liable to the employee for two times that unpaid amount as liquidated damages." (Emphasis added.) For purposes of the petitioner's case, the issue of whether the jury should have been instructed on liquidated damages is wholly moot because the jury determined that the respondents did *not* fail to pay the petitioner any wages and did *not* violate the WPCA. As such, the petitioner is not entitled to any damages—compensatory, liquidated, or otherwise. This Court will not "resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies." *W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*, 217 W. Va. 454, 463, 618 S.E.2d 463, 472 (2005) (internal citations omitted). Accordingly, this legal issue must be saved for another day.

Finally, the petitioner assigns error in the circuit court's order sanctioning her and one of her lawyers for unilaterally terminating her deposition. She argues that the respondents' counsel was inquiring into matters protected by the attorney-client privilege, to which her counsel objected in good faith, thus she had the right to suspend the deposition and seek redress by filing a motion with the circuit court pursuant to Rule 30(d)(3) of the Rules of Civil Procedure.[16] The petitioner quotes syllabus point one of *Policarpio v. Kaufman*, 183 W. Va. 258, 395 S.E.2d 502 (1990): "The appropriate initial procedure for a deponent who believes a deposition is being conducted improperly is to suspend the deposition under Rule 30(d) of the West Virginia Rules of Civil Procedure and promptly apply to the court for an order to terminate the deposition or to limit its scope."

The respondents counter by arguing that the petitioner was observed reviewing the notebooks immediately prior to the start of her deposition, and the questions were carefully crafted to explore whether the notebooks actually contained privileged communications without revealing

---

[15] *See supra*, n. 11.

[16] *See supra*, n. 8.

the specific contents therein. The respondents argue that the attorney-client privilege may be waived, and "when a witness uses a writing . . . to refresh memory . . . before testifying . . . [a]n adverse party is entitled to have the writing . . . produced at the . . . deposition to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." W. Va. R. Evid. 612, in part.[17] The respondents argue that the circuit court correctly ruled that the petitioner unilaterally terminated the deposition in bad faith.

This Court has long held that "[t]he imposition of sanctions by a circuit court under W.Va. R. Civ. P. 37(b) for the failure of a party to . . . permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion." Syl. Pt. 1, in part, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985). Having reviewed the record, we find no abuse of discretion in the circuit court's sanctions orders.

In *Policarpio*, the Court explained that

> the relator's approach at the deposition was misguided when he announced through his attorney that he was terminating the deposition. It is clear from the language of Rule 30(d) that *it is the court that makes the decision to terminate a deposition upon an application by the deponent*. The appropriate initial procedure for a deponent who believes a deposition is being conducted improperly is to suspend the deposition under Rule 30(d) and promptly apply to the court for an order to terminate the deposition or to limit its scope.

*Policarpio*, 183 W. Va. at 260, 395 S.E.2d at 504 (emphasis added). Here, while the petitioner argues that she merely suspended the deposition to file a Rule 30(d) motion, she waited more than three weeks and then only filed *after* the respondents filed their motion for discovery sanctions.

---

[17] West Virginia Rule of Evidence 612 provides:

> (a) Scope. This rule gives an adverse party certain options when a witness uses a writing or object to refresh memory:
> (1) while testifying; or
> (2) before testifying, if the court decides that justice requires the party to have those options.
> (b) Adverse Party's Options; Deleting Unrelated Matter. An adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. If the producing party claims that the writing or object includes unrelated matter, the court must examine the writing or object in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record.
> (c) Failure to Produce or Deliver the Writing. If a writing is not produced or is not delivered as ordered, the court may issue any appropriate order. If production of the writing or object at the trial or hearing is impracticable, the court may order it be made available for inspection.

Moreover, the circuit court reviewed the videotape of the deposition, observed the demeanor of everyone involved, and carefully considered the questions asked by the respondents' counsel and the objections of the petitioner's counsel. Under these circumstances, we find no abuse of discretion in the circuit court's finding that the deposition was unilaterally terminated by the petitioner.

We similarly reject the argument that the petitioner acted in good faith. After observing the petitioner reviewing the notebooks in preparation for her deposition, the respondents' counsel had the right to inquire into the nature of the notebooks. The respondents' counsel did not ask for the specific information contained in the notebooks; rather, counsel asked, "[w]ithout telling me what information you wrote down [in the notebooks][,]" "was the information communicated to you by your attorney" and "[w]here did the information come from[?]" The circuit court found that the respondents' counsel was attempting to establish a record of whether the notebooks were protected by the attorney-client privilege, but the petitioner's counsel would not permit this. The circuit court found that if the respondents' counsel had been permitted to ask these "proper questions," this issue would not have necessitated the involvement of the discovery commissioner. We find no abuse of discretion in this reasoning.

## IV.  Conclusion

For the foregoing reasons, the circuit court's November 19, 2019, order denying the motion for a new trial is affirmed.

Affirmed

**ISSUED:** April 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Alan D. Moats, sitting by temporary assignment

**DISSENTING:**

Justice William R. Wooton

**Wooton, Justice, concurring, in part, and dissenting, in part:**

I concur with the majority's determination that the issue of liquidated damages is moot, and further concur with its affirmance of the discovery sanctions imposed by the circuit court. However, I respectfully dissent from the majority's conclusion that the court properly prohibited

9

the petitioner, Mary Zerfoss, from offering testimony or argument that her employment terms were not reduced to writing, as required by law. The petitioner's rate of pay was the critical issue in dispute. Under the particular facts and circumstances of this case I believe that the court's refusal to permit her counsel to argue to the jury that the respondents, Hinkle Trucking, Inc. and Gary Hinkle, failed to comply with the company's statutory duty to reduce the rate of her pay to writing – indeed, that the respondent *deliberately* failed to comply with that duty – was reversable error.

West Virginia Code § 21-5-9 (2019) provides in relevant part that "[e]very person, firm and corporation shall (1) [n]otify his employees in writing, at the time of hiring of the rate of pay, and of the day, hour, and place of payment." As we have held in a long line of cases, "the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 6, in part, *Foster Found. v. Gainer*, 228 W. Va. 99, 717 S.E.2d 883 (2011); *see also State ex rel. Staley v. Wayne Cnty. Ct.*, 137 W. Va. 431, 440, 73 S.E.2d 827, 832 (1953) ("The rule that the word 'shall' should be construed as mandatory has appropriate application when the provision of the statute relates to the essence of the thing to be done, or to matters of substance.") (citing *State ex rel. Boone County Coal Corporation v. Davis*, 133 W.Va. 540, 56 S.E.2d 907, 913 (1949)). It is readily apparent that the statutory command serves various purposes, one of which is to facilitate review by State agencies, when necessary. *See* text *infra*. However, another important purpose of the statute is to protect employees by ensuring that everyone clearly understands up front how, when, and how much employees will be paid, thus cutting off any possibility of dispute at a later date. In this regard, the Court in *Robertson v. Opequon Motors, Inc.*, 205 W. Va. 560, 519 S.E.2d 843 (1999),

> "made clear that the Wage Payment and Collection Act [(WPCA")] was created for the benefit of employees, who may often be at a disadvantage when dealing with their employers. 'The West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld.'"

*Id.* at 564, 519 S.E.2 at 847 (citing Syl. Pt. 3, *Jones v. Tri-County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988)). As we further explained, "[t]hough the Act does not establish a particular rate of pay, it does require an employer to notify an employee of the rate of pay, and of any changes to that rate, to spare workers from trying to hit an ever-moving target." *Opequon*, 205 W. Va. at 566, 519 S.E.2d at 849.

The United States District Court for the Northern District of West Virginia has held that there is no private cause of action for a violation of West Virginia Code § 21-5-9(1), a fact upon which the circuit court relied in its refusal to allow the petitioner to argue to the jury that respondents had violated the statute. *See Byard v. Verizon W. Virginia, Inc.*, No. 1:11CV132, 2012 WL 1085775, at *18 (N.D.W. Va. Mar. 30, 2012) ("The plain language of the WPCA and accompanying regulations place administration and enforcement of W. Va. Code § 21-5-9 squarely within the purview of the Commissioner. To the extent the plaintiffs have any sort of claim arising under this provision, a fact far from clear, it is not one that they are entitled to privately enforce or bring to court in the first instance."). We have not had occasion to determine whether *Byard* accurately foretold how this Court would rule on this issue, and we need not do so in the instant

case because the issue is a red herring. I agree with the majority on this point; the petitioner did not claim to have suffered damages resulting from the respondents' breach of their statutory duty.

However, the majority glosses over the undeniable fact that evidence concerning the respondents' non-compliance with their statutory duty was relevant to the issue of the petitioner's rate of pay and would have added considerable heft to her side of that argument, which had been reduced to a "he said, she said" dispute in the absence of the documentation required by section 21-5-9(1) – documentation that had admittedly, and intentionally, never been provided to the petitioner. As respondent Gary Hinkle testified in his deposition:

> Q:      Why didn't you provide a written notice of Mary's pay rate?
>
> A:      The trucking industry is a real competitive industry, and we don't want our rates out there, our rate of pay, out in the general public for everyone to discuss. If they have a question, all they have to do is come ask us to find the rate.
>
> Q:      And what you testified to previously we don't give that out because we're in a competitive industry.
>
> A:      We don't give it out to fifty-some drivers as a general practice.
>
> Q:      So it's an intentional decision not to give it out?
>
> COUNSEL:    Object to form, calls for a legal conclusion.
>
> A:      Yes.

The circuit court held that it would be unduly prejudicial to the respondents to allow the jury to be told that they had violated an express statutory mandate,[1] a ruling that was, in my view, clear error. First, why should the respondents be shielded from the consequences of their decision – an intentional, fully considered decision – to break the law? Second, in its analysis, *see supra* note 1, the court failed to take into consideration that the exclusion of the crucial corroborating evidence of her claimed rate of pay was far more prejudicial to the petitioner than its admission would be to the respondents.  In that regard, the jury might well have concluded that the respondents' refusal to provide the petitioner with the documentation required by the statute, either

---

[1] The circuit court stated that

> the prejudicial impact of explaining to a jury or trying to explain to the jury that, yes, they violated 21-5-9, even though that's just an administrative remedy, and then having them still try to interpret what the contract is based on the evidence and what the – what the agreement was, what Mary says, what Travis says, what Gary says would be impossible. It would not be fair to try to do that.

11

at the time she was hired or thereafter, left petitioner to flail at an "ever-moving target" which, given the petitioner's burden of proof, would be difficult to prove under the best of circumstances. *See Opequon*, 205 W. Va. at 566, 519 S.E.2d at 849. Third, under the facts and circumstances of this case, where the respondents purposefully violated section 21-5-9(1), it could reasonably be argued that the petitioner was entitled not only to argue the violation, but also to have the jury instructed that any ambiguity in the evidence with respect to the rate of pay should be construed against the respondents. *Cf.* Syl. Pt. 6, *Meadows v. Wal–Mart Stores, Inc.,* 207 W. Va. 203, 530 S.E.2d 676 (1999) ("Terms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees."); *see also Lipscomb v. Tucker Cnty. Comm'n*, 206 W. Va. 627, 628, 527 S.E.2d 171, 172 (1999).

Although a circuit court has broad discretion with respect to the admission of evidence or argument, that discretion is not unlimited; the bottom-line question is whether the ruling at issue was fundamentally fair. In my view, this ruling was not. The petitioner's presentation of her side of the case was hamstrung by a ruling that gave the respondents an unfair advantage – and a significant advantage at that. Accordingly, I respectfully dissent.