**LABOR & INDUSTRIAL RELATIONS
COMMISSION, Appellant,**

v.

**DIVISION OF EMPLOYMENT
SECURITY, Respondent.**

**DIVISION OF EMPLOYMENT
SECURITY, Appellant,**

v.

**Alma GOWAN, Labor & Industrial
Relations Commission and De Soto
Shoe Company, Respondents.**

**Nos. 63305, 63307.**

Missouri Court of Appeals,
Eastern District,
Division Seven.

July 6, 1993.

Marilyn Green, Sandy Bowers, Jefferson City, for Division of Employment Sec.

James B. Cranshaw, Jefferson City, for Labor & Indus. Relations Com'n.

KAROHL, Chief Judge.

This consolidated appeal emanates from a plant closing. It involves two claimants for unemployment benefits and two independent administrative determinations that certain payments to claimants from their former employer made pursuant to a federal notice statute regarding such closings should serve to reduce unemployment benefits. Essentially, the two cases were factually and procedurally identical through the point at which the Labor and Industrial Relations Commission [Commission] adopted findings that payments made to the claimants by their employer pursuant to the requirement of the Worker Adjustment and Retaining Notification Act [WARN], 29 U.S.C. §§ 2101–2109 (1988) should be treated as wages for purposes of the Missouri Employment Security Law, §§ 288.010–288.500 RSMo 1986 and therefore offset unemployment benefits. The Act requires an employer to give employees 60 days written notice before a plant closing or pay them for that period. Judicial review of these two claims in two different counties resulted in conflicting circuit court orders. The Division of Employment Security appeals the circuit court order affirming the Commission's conclusions, and the Commission appeals another circuit court's order reversing its conclusions.

The narrow issue presented is whether WARN money, that is, payments to employees from their employers who fail to give the required notice before plant closings and mass layoffs, is more in the nature of "wages" than "severance pay."

Wage-type payments paid after separation from service are deductible from unemployment benefits, and severance or termination-type payments are not. Although the results reached in the circuit courts formed the basis for this appeal, this court reviews the decision of the administrative body, not the judgments of the circuit courts. *First Bank of Commerce v. Labor and Indus. Relations Comm'n.*, 612 S.W.2d 39, 42 (Mo.App.1981). The scope of review here is the same as it was in the circuit court, and it is governed by § 288.-210, which states in relevant part:

> In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law. Such actions and the questions so certified shall be heard in a summary manner and after the hearing the court shall enter an order either affirming the decision of the commission or remanding the cause to the commission for further proceedings not inconsistent with the declarations of law made by the court.

Therefore, where the Commission's factual findings are supported by competent evidence in the record, we will only determine whether application of §§ 288.010–288.500 to the undisputed facts was erroneous as a matter of law.

The crucial facts are the same for both claimants. On or about February 23, 1990, the Penaljo Shoe Company advised its employees that the plant would be closed down on April 24, 1990, until which date employees would receive WARN payments for any week during which they were not fully employed. Alma Gowan and Marie Bridgeman last reported to work on March 14, 1990. Both applied for and received unemployment benefits. Claimants Gowan and Bridgeman received notices from the Division of Employment Security that they had been overpaid because of unreported vacation pay. Claimant Gowan and Claimant Bridgeman requested and were granted a hearing, after which a deputy determined in both cases there was an overpayment of benefits resulting from vacation pay, but WARN payments did not offset unemployment benefits under Chapter 288, RSMo 1986.

Both claimants appealed the deputy's determination to the appeals tribunal. The appeals tribunal modified the overpayment figure upward for both claimants, finding that WARN payments did offset benefits. In both cases, the claimants and the Division of Employment Security filed timely applications for review with the Labor and Industrial Relations Commission. The Commission issued its decision affirming the appeals tribunal for claimant Gowan on September 10, 1990 and for claimant Bridgeman on November 7, 1990. The Division of Employment Security filed petitions for judicial review with the appropriate circuit courts. On November 24, 1992, the Circuit Court of Jefferson County issued an order affirming the decision of the Labor and Industrial Relations Commission, from which the Division of Employment Security appealed to this court. On December 1, 1992, the Circuit Court of Washington County issued an order reversing the decision of the Commission, from which the Labor and Industrial Relations Commission appealed to this court. The appeals were then consolidated.

In both cases, the Commission adopted the findings of fact and conclusions of law of the appeals tribunal. The appeals tribunal concentrated on the vacation pay and the terms of the employment agreement in supporting its conclusions of law. The employment agreement under which both claimants worked states: "Employees who are laid off, quit, retire or are discharged must have been in the continuous service of the employer for the qualifying period from April 1 of the prior year up to and including March 31 of the year in which the vacation is earned and occurs to be eligible for vacation pay." The record demonstrates that both claimants officially stopped working on March 14, but received four weeks of vacation pay for the year ending March 31. The referee concluded, therefore, that the period between March 14 and April 24, 1990, when claimants con-

tinued to remain eligible for benefits attributable to their employment and continued to draw full compensation earmarked as either vacation or WARN pay was a period of time when the employment relationship continued. The referee stated:

> Had [claimant] been discharged on March 14, 1990, she would not have become eligible for holiday or vacation pay from the employer; and such a payment would have been a gratuity from the employer which could only be described as severance or termination pay. But, the claimant was not discharged on March 14, 1990; she was laid off with a continuing association with the employer for which she was paid wages under the provisions of Sections 2101 through 2105 of the Worker Adjustment and Retraining Notification Act 1988 (Public Law 100–379) whereby the covered employer must either continue employees in employment until the end of a 60–day period after the employer serves written notice of an order to close its plant (Section 2102), or if it violates that requirement, to pay aggrieved employees as if they had been in continuous employment for 60 days after the order of a plant closing and to provide all the benefits under an employee benefit plan which would have been maintained had the employee been in the employment during the notice period (Section 2104).

A similar finding was entered for both claimants.

We agree with the conclusion set forth, but we base our decision on the body of employment security law and the nature of all WARN payments rather than the analysis relied upon above.

For clarity, we identify the relevant portions of the Missouri Employment Security Law and the WARN Law, then apply the benefit provisions of Missouri's statute to the nature of WARN payments.

The public policy of the Employment Security statute is set out:

> 1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.
>
> 2. This law is to be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment. Section 288.020 RSMo 1986.

In calculating unemployment benefits for eligible claimants, any wages received by the claimant reduce such benefits, and wages are defined:

> "Wages" means all remuneration, payable or paid, for personal services including commissions and bonuses and, ... the cash value of all remuneration paid in any medium other than cash.... Severance pay shall be considered as wages to the extent required under the Federal Unemployment Tax Act, 26 U.S.C. Section 3306(b). Vacation pay and holiday pay shall be considered as wages for the week with respect to which it is payable. Section 288.036 RSMo Cum.Supp.1992.

The benefits of partially unemployed claimants are not reduced, however, by severance pay:

> 3. Each eligible insured worker who is partially unemployed in any week shall be paid for such week a partial benefit.... Termination pay, severance pay ... shall not be considered wages for the purpose of this subsection. Section 288.-060 RSMo Cum.Supp.1992.

The WARN Act provides, in part, that an "employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order ..." 29 U.S.C. § 2102.

Failure to give such notice subjects the employer to a civil action for back pay for each day of the violation, less "any wages paid by the employer to the employee for the period of violation," and "any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation," and any payment made to a third party on behalf of and attributable to the employee, such as health insurance premiums or pension plan contributions. 29 U.S.C. § 2104(a)(2).

No provision of the Missouri Employment Security Law addresses whether payments made to employees pursuant to the WARN Act are deductible from unemployment benefits. We are not aware of any cases decided in Missouri or any other jurisdiction on this precise issue.

The Division of Employment Security relies on the language of the WARN Act in arguing that payments are voluntarily made by the employer, and are not in exchange for services rendered by the employee. Under this view, the deductibility of payments made to employees pursuant to WARN from unemployment benefits would depend upon the category and timing of the payments. In other words, the deductibility of WARN payments would depend on a factual question of how the employer characterized payments and treated the employment relationship.

Such reasoning is unpersuasive for several reasons. First, the deductibility of employee pay from unemployment benefits is governed by the Missouri Employment Security statute, and not the WARN statute. We must determine whether WARN payments amount to wages within the meaning of Missouri's statute. The fact that the WARN Act allows an employer to reduce the required notice period pay by voluntary and unconditional payments to employees made during the period of violation does not change the character of WARN payments to "voluntary." On the contrary, employers are required to comply with the notice provision and keep employees on the payroll for 60 days after notifying them of a plant closing or face civil liability. Furthermore, the fact that the payments must be made whether the employee is performing his or her job does not change the fact that the obligation to give notice before plant closing could be characterized as "in exchange for services rendered." Vacation pay is not pay for work performed during vacation. Certainly it is an accrued benefit for services rendered and it is so reflected in § 288.036.

Logically, similarly situated persons must be treated similarly under the Employment Security Law. Consider a situation in which a large plant gives all its employees written notice of its intent to close in 60 days. A plant representative tells all the employees that some divisions of the plant will shut down sooner than others, but that everyone will receive full wages for being available to work for the next 60 days regardless of how long they are needed pursuant to the requirements of the WARN Act. During the subsequent 60 days, some employees are sent home for the duration of the period every few days, but everyone is paid as if he or she continues to work. Under this hypothetical, if those employees who are sent home first are permitted to apply for unemployment benefits without reporting WARN income, they are unjustly enriched as compared to co-workers who must actually stay on the job throughout the 60 days. Unquestionably, the latter employees' earnings are simply wages, or compensation for services rendered, and deductible from unemployment benefits. Our interpretation of the WARN Act is that the employees who draw WARN pay are likewise receiving compensation for services rendered, albeit past services.

In general, federally mandated WARN payments are not a speculative form of income for employees, as would be the case for a pure gratuity or an arbitrary post-termination severance payment. Employees with over 120 days of service can count on 60 days of notice before a plant closing or can expect to receive 60 days worth of remuneration at a rate of pay not less than their final rate of pay or average rate over the last three years in lieu of notice. 29 U.S.C. § 2104(a)(1).

The policy of the Missouri Employment Security Law is to prevent economic insecurity. There is no insecurity with respect to WARN payments. Therefore, we hold that payments to employees required by the Act are fully deductible from Missouri unemployment benefits.

We affirm the judgment of the Circuit Court of Jefferson County, Cause No. CV1090–403CC on the appeal brought by the Labor and Industrial Relations Commission. We reverse and remand the judgment of the Circuit Court of Washington County, Cause No. CV190–5108CCJ on the appeal brought by the Division of Employment Security.

PUDLOWSKI and CRANDALL, JJ., concur.