**DIVISION of EMPLOYMENT SECURITY, Appellant,**

v.

**LABOR & INDUSTRIAL RELATIONS COMMISSION, et al., and Allied Signal, Inc., Respondents.**

**No. WD 49240.**

Missouri Court of Appeals, Western District.

Oct. 4, 1994.

Sharon Ann Willis, Kansas City, for appellant.

John B. Keller, Jefferson City, for Labor & Industrial Relations Comm'n.

David A. Sosinski, Kansas City, for Allied Signal, Inc.

Before FENNER, C.J., P.J., and LOWENSTEIN and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, Missouri Division of Employment Security (Division), appeals the decision of the Circuit Court of Jackson County, Missouri, which affirmed the decision of the Labor and Industrial Relations Commission (Commission) finding that WARN payments (payments pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109) are wages and are therefore fully deductible from Missouri unemployment benefits, and assessing costs against the Division.

A brief background to this case is as follows: The Kansas City division of Allied–Signal, Inc. (Allied–Signal) announced a reduction of force on November 9, 1990, where over 500 employees would be laid off.[1] Employees affected by this reduction of force were covered under the provisions of the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. §§ 2101–2109. A major provision of this Act, 29 U.S.C. § 2102(a), states, in pertinent part, "An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order" to the union leadership. Thus, pursuant to WARN, Allied–Signal was required to provide its employees 60 days advance written notice of any mass layoff (involving 500 or more employees) or pay them for that period if the notice provision were violated. *See Labor & Industrial Relations Comm'n v. Division of Employment Security*, 856 S.W.2d 376, 377 (Mo.App.1993).

In the case at bar, notice under the statute was given on November 9, 1990. The employees' last day of work was on November 15, 1990; however the employees continued to receive full pay and benefits through January 7, 1991 pursuant to WARN. In other words, the employees affected by the reduction of force (or layoff) received the same amount of pay during this 60–day period (November 9, 1990 through January 7, 1991) with all the appropriate deductions as if they were still working at the company. Employee benefits continued as well, *i.e.*, insurance, earned vacation, educational assistance, employee assistance plan, 401(k) plan, and accrual of pension and seniority. However, the employees did not perform work during this period (with the exception of one individual who returned to work during the WARN period), and were asked to turn in their security clearance badges. Some employees came to the facility on a voluntary basis to avail themselves of the job services and benefit meetings.

On December 19, 1990, a deputy in the Division determined that claimant, Danniel Allison, along with other claimants, all of whom were employees affected by the layoff at Allied–Signal, are "eligible [for unemployment compensation benefits] beginning 11/18/90" because "the monies received [pursuant to WARN] are remuneration in lieu of notice and are not wages for service performed." Allied–Signal appealed this determination of eligibility for unemployment benefits to the Appeals Tribunal. A hearing was held before the Appeals Tribunal on July 29th and 30th of 1991.

On October 25, 1991, the Appeals Referee affirmed the deputy's determination and found that "[t]he claimants are not ineligible for [unemployment] benefits for the period November 18, 1990 through January 12, 1991." In its conclusions of law, the Appeals Referee stated, in part, as follows:

The question before the Appeals Tribunal is whether this remuneration [from November 1990 to January 1991] constituted wages and is therefore deductible from their weekly benefits amount or was severance pay and therefore was not deductible from their weekly benefit amount under Section 288.060.3, RSMo.... The claimants were not required to do anything by

---

1. The record reflects that approximately 460 hourly employees, belonging to a labor union, were notified of the layoff on November 9, 1990 and approximately 48 salaried employees were laid off in December of 1990. Thus, the total figure of the individuals to be laid off was in excess of 500.

way of "personal service" in order to receive their regular weekly wages from November 18, 1990 through January 7, 1991. Although the employer argues that the individuals' weekly pay continued along with their benefits for [that] period, and therefore they were not unemployed, the Appeals Tribunal finds that the individuals had no jobs to continue after November 15, 1990, the date that they were laid off from their employment.... The remuneration paid by the employer to the claimants ... did constitute severance pay as it was payment of remuneration to the claimants on or *after* the date of termination.... Since the claimants performed no personal services for the employer during the weeks in question, the remuneration which they received ... constitutes nondeductible wages, i.e., severance pay. The remuneration ... is therefore not deductible from their unemployment insurance benefit amount.

Thus, the Appeals Tribunal found that the employees were entitled to unemployment benefits, in addition to the WARN pay they were already receiving, during the 60–day notice period.

Allied–Signal filed an application for review to the Labor & Industrial Relations Commission. The Commission reversed the decision of the Appeals Tribunal.[2] The Commission presented the issue as "whether the claimants were employed during the sixty day notice period under [WARN]." The Commission found that the claimants were employed during the WARN notice period and that the monies received by the claimants during this 60–day period were regular wages. The Commission stated, "Since the employees were receiving wages and performing services from November 18, 1990 to January 12, 1991, they were employed and, therefore, not eligible for unemployment benefits during that time."

The Division filed a petition for judicial review in the Circuit Court of Jackson County, Missouri, in November of 1992, claiming that the Commission's decision is not supported by competent and substantial evidence on the whole record, misinterprets the facts and law, is contrary to the overwhelming weight of the evidence and is contrary to law. The Division asked the court to reverse the Commission's decision and reinstate the decision of the Appeals Tribunal.

On February 22, 1994, the court entered its judgment affirming the Commission's decision. The court found that the issue in this case is answered by *Labor & Industrial Relations Commission v. Division of Employment Security*, 856 S.W.2d 376 (Mo.App. 1993), an Eastern District case which found that WARN payments are wages and are therefore fully deductible from Missouri unemployment benefits. This appeal followed.

■ In its first point on appeal, the Division argues that the circuit court erred in affirming the Commission's decision because "that decision is contrary to law in that monies paid unemployed workers for the period November 18, 1990 through January 12, 1991 pursuant to [WARN] are not remuneration for services rendered and are therefore not deductible from Missouri unemployment insurance benefits."

■ We initially note that, in this appeal, we review the decision of the Commission, not the judgment of the circuit court. *IXL Mfg. Co. v. Labor & Industrial Relations Comm'n*, 679 S.W.2d 903, 904 (Mo.App. 1984). The findings of the Commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, are conclusive; judicial review then is confined to questions of law. *Tin Man Enterprises, Inc. v. Labor & Industrial Relations Comm'n*, 866 S.W.2d 147, 148 (Mo.App.1993); § 288.-210, RSMo 1986.

In *Labor & Industrial Relations Commission v. Division of Employment Security*, 856 S.W.2d 376 (Mo.App.1993), the Eastern District squarely addressed the issue before this court, that is, whether WARN payments should be treated as wages for purposes of the Missouri Employment Security Law, Chapter 288, RSMo 1986, and therefore off-

---

**2.** One member of the Commission dissented, arguing that he would affirm the decision of the Appeals Tribunal.

set unemployment benefits. The Eastern District stated that wage-type payments paid after separation from service are deductible from unemployment benefits, and severance or termination-type payments are not. *Id.* at 378. The court held that payments to employees pursuant to WARN are fully deductible from Missouri unemployment benefits. *Id.* at 381.

In the Eastern District's analysis, the court identified the relevant portions of the Missouri Employment Security Law and the WARN Law, and applied the benefit provisions of Missouri's statute to the nature of WARN payments. *Id.* at 379. The court set forth the public policy provision of the Missouri Employment Security Law, which states as follows:

> 1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.
>
> 2. This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment.

§ 288.020, RSMo 1986.

Wages received by the claimant reduce unemployment benefits. In the Missouri statute, wages are defined, in pertinent part, as follows:

> "Wages" means all remuneration, payable or paid, for personal services including commissions and bonuses and, ... the cash value of all remuneration paid in any medium other than cash.... Vacation pay and holiday pay shall be considered as wages

for the week with respect to which it is payable....

§ 288.036, RSMo Supp.1993.

Under the WARN Act, 29 U.S.C. §§ 2101–2109, the covered employer must either provide its employees with 60 days advance written notice before ordering a mass layoff (§ 2102) or the employer must pay aggrieved employees as if they had been in continuous employment for that 60–day notice period and provide all the benefits which would have been maintained had the employee been working during the notice period (§ 2104). Under section 2104(a)(1), any employer who violates the 60–day notice requirement under section 2102 shall be liable to each aggrieved employee who suffers an employment loss as a result of the mass layoff. However, the amount for which an employer is liable is reduced by any wages paid by the employer to the employee for the period of the violation, any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation, and any payment by the employer to a third party or trustee on behalf of and attributable to the employee for the period of the violation. 29 U.S.C. § 2104(a)(2).

The Eastern District in *Labor & Industrial Relations Commission v. Division of Employment Security*, 856 S.W.2d at 380, found no provision of the Missouri Employment Security Law addressing whether payments made to employees pursuant to the WARN Act are deductible from unemployment benefits. In its analysis, the court noted that its task was to determine whether WARN payments amount to wages within the meaning of the Missouri Employment Security statute, as this statute, not the WARN statute, governs the deductibility of employee pay from unemployment benefits. *Id.* at 380.

The court found that "[t]he fact that the WARN Act allows an employer to reduce the required notice period pay by voluntary and unconditional payments to employees made during the period of violation does not change the character of WARN payments to 'voluntary.'" *Id.* at 380. To the contrary, employers are required to comply with the notice provision and keep employees on the

payroll for 60 days after notifying them of a plant closing or mass layoff, or face civil liability. *Id.* at 380. The court further stated:

> Furthermore, the fact that the payments must be made whether the employee is performing his or her job does not change the fact that the obligation to give notice before plant closing [or mass layoff] could be characterized as "in exchange for services rendered." Vacation pay is not pay for work performed during vacation. Certainly it is an accrued benefit for services rendered and it is so reflected in § 288.-036.

> \*   \*   \*   \*   \*   \*

> Our interpretation of the WARN Act is that the employees who draw WARN pay are likewise receiving compensation for services rendered, albeit past services.

> In general, federally mandated WARN payments are not a speculative form of income for employees, as would be the case for a pure gratuity or an arbitrary post-termination severance payment. Employees with over 120 days of service can count on 60 days of notice before a plant closing [or mass layoff] or can expect to receive 60 days worth of remuneration at a rate of pay not less than their final rate of pay or average rate over the last three years in lieu of notice. 29 U.S.C. § 2104(a)(1).

> The policy of the Missouri Employment Security Law is to prevent economic insecurity. There is no insecurity with respect to WARN payments. Therefore, we hold that payments to employees required by the Act are fully deductible from Missouri unemployment benefits.

*Id.* at 380–81.

We agree with the Eastern District's decision and find that it fully supports the Commission's decision in the case at bar.[3] In other words, we agree that the payments that the employees received pursuant to WARN during the 60–day notice period were wages and, thus, were fully deductible from Missouri unemployment benefits. We further find the Commission's decision to be consistent with the purpose behind the Missouri Employment Security Law.

Appellant's first point is denied.

In its second point on appeal, the Division argues that the circuit court erred in assessing costs against the Division because the Division, as an agency of the State of Missouri, is not required to pay costs.

■ In its judgment affirming the Commission's decision, the circuit court assessed costs against the Division. The court erred in so doing because costs may not be assessed against the Division since it is a representative of the State. *Dubinsky Bros. v. Industrial Commission,* 373 S.W.2d 9, 16 (Mo. banc 1963); *Brown v. Labor & Industrial Relations Comm'n,* 577 S.W.2d 90, 96 (Mo.App.1978).

The judgment of the circuit court finding that WARN payments are wages and are therefore fully deductible from Missouri unemployment benefits is affirmed. The judgment assessing costs against the Division is reversed. This case is remanded for judgment to be entered in accordance with this opinion.

All concur.

---

3. The Division, in its brief, acknowledges the Eastern District case that goes against its position. However, the Division argues that it disagrees with the court's analysis in *Labor & Industrial Relations Commission v. Division of Employment Security,* 856 S.W.2d 376 (Mo.App. 1993). The Division argues that the Eastern District interpreted the Missouri Employment Security Law narrowly and "apparently did not consider the case of *Capitol Castings, Inc. v. Arizona Department of Economic Security,* 171 Ariz. 57, 828 P.2d 781 (Ct.App.1992)," which supports the Division's position and is "better reasoned and ... more applicable to this case than [the Eastern District's decision]." The Division also cites to a Pennsylvania case, *Georgia–Pacific Corp. v. Unemployment Compensation Board of Review,* 157 Pa.Cmwlth. 651, 630 A.2d 948 (Ct.1993), which was handed down subsequent to the Eastern District's decision and which supports the Division's position.

We, however, agree with the Eastern District's decision and analysis and find no reason to deviate from that decision which squarely addresses the issue in this appeal.