Argued and submitted November 13, 1996, affirmed March 19, 1997

In the Matter of the Compensation of
William K. Bowler, Claimant.

STONE FOREST INDUSTRIES, INC.,
*Petitioner,*

*v.*

William K. BOWLER,
*Respondent.*

(95-04253; CA A91876)

934 P2d 1138

A.E. Bud Bailey argued the cause for petitioner. With him on the brief was Bailey & Associates, P.C.

James S. Coon argued the cause for respondent. With him on the brief was Swanson, Thomas & Coon.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Employer Stone Forest Industries seeks review of an order of the Workers' Compensation Board in which the Board held that claimant is entitled to temporary disability payments[1] for the period beginning when Stone, as part of a plant closure, terminated his modified duty employment and ending when it ceased making payments to him related to the Worker Adjustment and Retraining Notification Act (WARN). 29 USC §§ 2101-2109. Stone argues that its WARN payments constitute wages for the purposes of the Workers' Compensation Law and that claimant, therefore, was not entitled to temporary disability payments during the time that he received them. The Board rejected that argument, and we affirm.

Claimant compensably injured his knee on August 5, 1994, while working for Stone at its lumber mill in Albany. He had surgery for the injury on September 5. Stone accepted the claim and paid temporary total disability from September 5 through September 18. On September 19, claimant was released for modified work and began working at a modified job at his preinjury pay rate. On September 26, Stone notified claimant and its other employees that it intended to close the mill permanently. The last day of work was September 28. Stone paid its employees, including claimant, amounts equal to their regular wages and benefits through November 26, 1994.

Stone did not resume paying temporary disability benefits to claimant after the closure. Claimant did not receive unemployment benefits for this period, because he had previously exhausted his eligibility. On October 17, claimant began a light-duty job in computer sales that paid $1,000 per month, which is less than he had received while working for Stone.

Claimant was not medically stationary at the time of the hearing in May 1995. Stone conceded at the hearing that

---

[1] We use "temporary disability payments" to refer both to the temporary total disability payments that claimant seeks for the period before October 17, when he began his new job, and the temporary partial disability payments that he seeks thereafter.

claimant was entitled to temporary partial disability after November 26, 1994, when the WARN payments ended, but it disputed his right to temporary disability payments between the time when he stopped actually performing services and the end of the WARN payments. The administrative law judge and the Board both found in favor of claimant.

An injured worker is entitled to temporary total disability payments during the period of total disability. The amount of those payments is based on the worker's wages. ORS 656.210(1); ORS 656.211. The Workers' Compensation Law defines "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident[.]" ORS 656.005(29).

When a worker returns to regular or modified employment, the employer may terminate temporary total disability payments. ORS 656.268(3)(a). However, if the worker remains partially disabled, the employer must make temporary partial disability payments, whose amount is based on the relationship between the worker's wages at the new job and the amount of temporary total disability payments. If the worker earns wages equal to the wages used to calculate temporary total disability, the temporary partial disability payments will be zero. ORS 656.212; OAR 436-60-030(10). Under these provisions, claimant was not entitled to temporary disability payments while he was actually performing modified work at his preinjury pay rate.

■ When an injured worker returns to modified work at the preinjury wage rate, but the employer thereafter withdraws the job offer or the job no longer exists, the "worker is entitled to temporary total disability compensation as of the date the job no longer is available." This rule applies to situations that include, but are not limited to, "termination of temporary employment, layoff or plant closure." OAR 436-60-030(11)(b);[2] see Safeway Stores, Inc. v. Hanks, 122 Or App 582, 857 P2d 911, rev den 318 Or 60 (1993) (the employer had to resume temporary total disability payments when, as part

---

[2] All references to administrative rules are to the rules in effect at the time of the hearing in this case. No party asserts that any changes since then affect the issues on review.

of a labor dispute, it locked the claimant out of her modified employment).

In this case, soon after claimant returned to work and his right to temporary disability payments ended, Stone closed the plant and terminated his employment and that of all other workers in the mill. His modified job no longer existed, at least in the common meaning of the term, as of September 29. Under OAR 436-60-030(11)(b), he was entitled to temporary disability payments beginning on that date unless, as Stone argues, its payments of amounts equal to his wages and benefits were in fact "wages." We look first at the status of the payments under WARN and then at their status under the Workers' Compensation Law. We conclude that the payments were not wages, either for WARN or workers' compensation purposes.[3]

In WARN, Congress required larger employers to give employees and other affected entities specified notice of a plant closing or mass layoff. An affected employer that closes a plant without having given 60 days' notice violates the Act, 29 USC § 2102, and affected employees have a right to compensatory damages. 29 USC § 2104. Under 29 USC § 2104(a)(1), the employees are entitled to damages equal to each employee's back pay and benefits, at the higher of the employee's average regular rate over the previous three years or the employee's final regular rate, for each day of the violation, to a maximum of 60 days. However, 29 USC § 2104(a)(2) permits the employer to take a credit against that liability for three kinds of payments: (1) wages that the employer paid for the period of the violation; (2) any voluntary and unconditional payment to the employee that is not legally required; and (3) any payment to a third party (such as a health and benefit trust) that is attributable to the employee.

Although employers appear to treat their WARN obligations as alternative—either to give notice or to pay the statutory amounts during the notice period—that is not how

---

[3] Because of our conclusion, we do not need to consider whether, assuming that the payments were "wages," the job "existed" or was "available" when his employer did not require him to do any work.

the statute defines them. Rather, under the Act an employer, to comply, must give 60 days' notice before closing the plant or engaging in a mass layoff. The payments described in 29 USC § 2104 are not an alternative way to comply with the notice requirement but are damages for failing to comply. The payments mentioned in 29 USC § 2104(a)(2) do not excuse the employer's noncompliance but limit its liability for damages.

Although Stone appears to assume that its payments were wages under 29 USC § 2104(a)(2)(A), the federal courts that have considered the issue have limited the term to payments for work actually performed. Thus, in *United Steelworkers v. North Star Steel*, 809 F Supp 5, 9 (MD Pa 1992), *aff'd in part and rev in part* 5 F3d 39 (3rd Cir 1993), *cert den* 510 US 1114 (1994), the employer instituted a mass layoff without providing the WARN notice. The court allowed the employer to deduct from the back pay damages under 29 USC § 2104(a)(1) the amounts that seven employees had earned after being recalled to work during the 60-day period after the layoff. Those amounts were wages. In *Washington v. Aircap Industries, Inc.*, 860 F Supp 307 (DSC 1994), 16 employees worked during the 60 days following the violation date, and the court deducted the wages that they earned from the employer's WARN liability. 860 F Supp at 313-15. Under the approach that these courts adopted, on September 26 Stone became liable to claimant for 60 days' back pay damages but was entitled to deduct from that liability the wages that he earned on September 27 and 28.[4]

It thus appears that Stone's payments were not "wages" under WARN. They were not something that Stone could deduct from its liability for damages under 29 USC § 2104(1)(a). Rather, they were the payment of that liability, which consisted of 60 days' compensation plus benefits, less

---

[4] As Stone points out, bankruptcy courts have treated WARN back pay liability as wages for the purposes of determining priorities under the Bankruptcy Code. *See, e.g., In re Hanlin Group, Inc.*, 176 BR 329, 333 (Bkrtcy DNJ 1995); *In re Cargo, Inc.*, 138 BR 923 (Bkrtcy ND Iowa 1992). They do so by treating the payments as severance pay, which the Bankruptcy Code includes in its definition of priority wages. *See* 11 USC § 507(a)(3). In both of these cases, the amounts in issue were the back pay damages created in 29 USC § 2104(a)(1); the employer had made no payments that could constitute credits against those damages under 29 USC § 2104(a)(2). The meaning of "wages" under WARN, thus, was not at issue.

any wages that it paid claimant for work that he actually performed during the 60-day period.[5]

■ We turn to whether Stone's payments are "wages" under the Workers' Compensation Law. No court has directly discussed this issue, although one federal court has held that workers' compensation payments received during the 60-day WARN period do not reduce the employer's liability for back pay, because the payments are not within the Act's apparently exhaustive list of excludable amounts. *United Steelworkers*, 809 F Supp at 9.

Several courts have discussed whether the payments are "wages" under unemployment compensation laws, which often define the term in a similar fashion to workers' compensation laws. Most courts hold that WARN payments are not wages for unemployment compensation purposes. **"[M]erely because wage amounts form the basis for the formula by which to calculate the WARN payments, those payments are not lost wages; they are damages owed for violation of WARN's notice requirements."** *Georgia-Pacific v. Unemp. Comp. Bd.*, 630 A2d 948, 957 (Pa Cmwlth 1993) (boldface in original). As that court emphasized earlier in its opinion,

> "The WARN payment is not intended as a means of replacing lost wages; rather, it is 'to provide an incentive and a mechanism for employers to satisfy their obligations to their employees in the event they fail to provide 60 days advance notice [of plant closure] to their employees.' " 630 A2d at 956, *quoting* HR Rep No 576, 100th Cong, 2nd Sess at 1053 (1988), *reprinted in* 1988 US Code Cong & Admin News 2078, 2086.

Thus, "WARN payments are in the nature of compensatory * * * damages." 630 A2d at 956 n 16. Because WARN payments are damages rather than recompense for services actually rendered, they are not wages and do not disqualify an employee from receiving unemployment compensation.

---

[5] The conclusion that the payments were not wages under WARN resolves Stone's argument that the reference in 29 USC § 2104(a)(2) to "any wages" preempts any state definition of "wages" for other purposes. Federal law does not purport to deal with the issue that we must decide under state law.

630 A2d at 959. *See also Capitol Castings v. Dept. of Economic Sec.*, 171 Ariz 57, 828 P2d 781 (App 1992); *Westinghouse v. Callahan*, 105 Md App 25, 658 A2d 1112 (1995).[6]

No Oregon court has discussed the status of WARN payments in any context. However, in *Employment Div. v. Ring*, 104 Or App 713, 803 P2d 766 (1990), *rev den* 311 Or 432 (1991), we considered a related issue concerning what constitutes "wages" for the purposes of unemployment compensation. The question in *Ring* was whether an employee was required to repay unemployment compensation benefits after she recovered back pay damages attributable to the weeks during which she received benefits. We noted that the applicable law defined wages as "remuneration for employment" and that it defined employment as "service for an employer, * * * performed for remuneration or under any contract of hire * * *." We concluded from those definitions that "one does not receive 'remuneration' unless one actually performs a *service*." 104 Or App at 715-16 (emphasis in original). Because the claimant did not perform services during the weeks for which she received back pay damages, the payments were not wages. Therefore, she did not have to repay the unemployment compensation benefits. In reaching this conclusion we held that an Employment Division rule that called for a different result was invalid because it conflicted with the statute.

The issues in *Ring* are close to the issues in this case. Under the applicable rule, Stone could avoid making temporary disability payments to claimant only if his job was "available" during the period after Stone terminated his employment. Stone's argument that the job was "available" depends on its assertion that the payments that he received were "wages." However, the Workers' Compensation Law defines "wages" as the rate at which "service rendered" is "recompensed under the contract of hire." ORS 656.005(29).

---

[6] One state holds, to the contrary, that WARN payments are wages because they are compensation for *past* services and, therefore, disqualify an employee from unemployment compensation. *Division of Emp. Sec. v. Labor & Indus.*, 884 SW2 399 (Mo App 1994); *LIRC v. Division of Employment Security*, 856 SW2 376 (Mo App 1993). These cases do not sufficiently consider that WARN payments are Congressionally imposed damages, not contractual compensation for services, past or present.

That is essentially identical to the definitions that we considered in *Ring*. Thus, as with *Ring*, there are no wages unless the employee renders services. Claimant's job was not "available"; he provided no services for Stone during or attributable to the period that he received WARN payments. Those payments are not attributable to any period for which he did provide services.

Thus, even accepting Stone's premise that claimant's job was "available" if the payments were "wages," its argument fails. The WARN payments were damages for Stone's failure to give the notice of plant closure that the Act required. Although the WARN payments resulted from claimant's prior employment, they were not contractual compensation for his services. Under the reasoning of *Ring*, they were not wages for purposes of the Workers' Compensation Law and do not affect his right to temporary disability payments. Claimant was otherwise eligible for temporary disability payments, and the Board correctly ordered Stone to pay them.[7]

Affirmed.

---

[7] Stone suggests that this result may be a windfall to claimant. As claimant and the Board point out, however, noninjured workers were able to obtain alternative employment without affecting their WARN payments. Claimant, because of his compensable injury, was limited in the employment that he could perform and the amount that he could earn. Temporary disability payments, thus, would simply place him in the same position that noninjured workers already occupied. That is not a windfall.