521 S.E.2d 537

Randall CONRAD, James G. Cameron, Ben Kline, Charles E. Walker, Nelson W. Shaw, Joseph G. Farrie and All Other Present and Former Employees of Defendant Similarly Situated, Appellants,

v.

CHARLES TOWN RACES, INC., a West Virginia Corporation, Appellee.

No. 24739.

Supreme Court of Appeals of West Virginia.

Submitted June 9, 1998.

Decided July 15, 1998.

Dissenting Opinion of Judge Fred Risovich, II, Oct. 20, 1999.

Susan R. Snowden, Esq., Martin & Seibert, Martinsburg, West Virginia, Attorney for the Appellants.

Charles F. Printz, Jr., Esq., William G. Anderson, Jr., Esq., Bowles Rice McDavid Graff & Love, Martinsburg, West Virginia, Attorneys for the Appellee.

MAYNARD, Justice:

The appellants, former employees of the appellee, Charles Town Races, Inc., appeal the February 21, 1997 order of the Circuit Court of Jefferson County which dismissed their claim against the appellee for an alleged violation of the West Virginia Wage Payment and Collection Act, W.Va.Code §§ 21–5–1 to 21–5–18. Specifically, the appellants' complaint states that the appellee failed to pay the appellants their "wages" pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101–2109 (1988), within the time periods prescribed by W.Va.Code § 21–5–4(b), (c) or (d).

The circuit court found, *inter alia*, that the West Virginia Wage Payment and Collection Act does not apply to statutory remedial payments under the Worker Adjustment and Retraining Notification Act. For the reasons set forth below, we agree and affirm.

## I.

### FACTS

The relevant facts are simple and undisputed. The appellants were employees of the appellee, Charles Town Races, Inc. The appellee belongs to a class of employers which is required to give its employees notice of the close of its facilities sixty days prior to actual closure pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101–2109 (1988).[1] On November 12, 1994, the appellee notified all of its employees that they were being given sixty days' notice under the WARN Act that the appellee planned to permanently close its facility effective January 14, 1995. However, the appellee actually closed on January 6, 1995, eight days prior to the notice date of January 14, 1995. All wages and benefits earned prior to the January 6, 1995 closing date were paid in full.

On March 17, 1995, the appellee sent each employee a check for the amount of money that each worker would have earned if the worker had worked his or her regular schedule from January 6, 1995 to January 14, 1995. Accompanying the checks was a letter from the appellee's president, D. Keith Wagner, which stated in part:

To ensure compliance with the WARN Act, enclosed you will find a check, which represents wages for the number of regular work days that you would have worked had the Race Track continued to operate pursuant to its regular custom and practice during the entire sixty (60) day notice period.

On December 10, 1996, the appellants filed a complaint in the Circuit Court of Jefferson County, West Virginia claiming in part:

13. Because of the failure to pay wages in a timely manner and violation of the Warren [sic] Act, the Defendant failed to pay their wages in full within the times required by West Virginia Code § 21–5–4(b), (c) or (d).[2] As a result of the failure to pay wages Plaintiffs have suffered an injury.

14. Plaintiffs and all others similarly situated are entitled to recover liquidated damages in the amount of thirty (30) days wages as a result of Defendant's failure to pay Plaintiffs all wages in full within the time required by West Virginia Code § 21–5–4(b), (c) or (d), plus prejudgment interest, the costs of this action and a reasonable attorney's fee. (Footnote added).

On January 17, 1997, the appellee filed a motion to dismiss the appellants' complaint, pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, on the ground that the complaint failed to state claims upon which relief could be granted. The circuit court granted the appellee's motion by order of February 21, 1997, finding, in relevant part, that the Wage Payment and Collection Act ("WPCA") does not apply to the WARN

1. Section 2101 of WARN defines the term "employer" as used in the act as "any business enterprise that employs—
 (A) 100 or more employees, excluding part-time employees; or
 (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)[.]"

2. According to W.Va.Code § 21–5–4(b), (c) and (d) (1975):
 (b) Whenever a person, firm or corporation ·discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours.
 (c) Whenever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages no later than the next regu-

lar payday, either through the regular pay channels or by mail if requested by the employee, except that if the employee gives at least one pay period's notice of intention to quit the person, firm or corporation shall pay all wages earned by the employee at the time of quitting.
 (d) When work of any employee is suspended as a result of a labor dispute, or when an employee for any reason whatsoever is laid off, the person, firm or corporation shall pay in full to such employee not later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, wages earned at the time of suspension or layoff.

Act's statutory remedial payments. The appellants appeal this order.

## II.

## STANDARD OF REVIEW

This Court recently stated that "[a]ppellate review of a circuit court's order granting a motion for judgment on the pleadings is de novo." Syllabus Point 1, *Copley v. Mingo County Bd. of Educ.*, 195 W.Va. 480, 466 S.E.2d 139 (1995). With this in mind, we now turn to the issues at hand.

## III.

## DISCUSSION

In their petition to this Court, the appellants set forth two assignments of error:

1. Whether the Circuit Court erred in ruling that the West Virginia Wage Payment and Collection Act could not be enforced concurrently with and was preempted [sic] by the WARN Act.

2. Whether the Circuit Court erred in ruling that the West Virginia Wage Payment and Collection Act does not apply to the payment of wages in this case.

We believe that the second assignment of error is the crux of this case. If the WARN Act payments made to the appellants for the period from January 6, 1995 to January 14, 1995 are not wages under the WPCA, the appellee did not violate the WPCA by not paying the "wages" within the prescribed time period, and the first assignment of error is moot. Therefore, our answer to the second question above disposes of all issues before us.[3]

In support of their position that WARN Act payments are wages within the meaning of the WPCA so that they are entitled to recovery for late payment, the appellants make the following arguments. First, the appellants note that the WARN Act itself describes the compensation available to employees who suffer loss due to an employer's failure to provide the required notification as "back pay." Also, in his letter to former employees, the appellee's president described the payments made to the appellants as "wages." Second, the appellants assert that other states treat WARN Act payments as wages for the purpose of applying their employment laws. *Citing Labor and Indus. Relations Com'n v. Division of Employment Sec.*, 856 S.W.2d 376 (Mo.App. E.D.1993), and *Washington v. Aircap Industries, Inc.*, 860 F.Supp. 307 (D.S.C.1994). Third, the appellants aver that the circuit court did not have before it information which could have been obtained through discovery which would indi-

---

3. The circuit court based its order of dismissal on several findings. Specifically, the circuit court stated:

1. Plaintiffs' claim that Charles Town has violated the Wage Payment and Collection Act, West Virginia Code § 21-5-4, is predicated upon an allegation that Charles Town has violated the provisions of WARN.
2. There has been no adjudication that the Defendant has violated WARN.
3. The exclusive source of remedies for WARN violations is WARN. WARN specifically states that "[t]he remedies provided for in this section shall be the exclusive remedies for any violation of this chapter." 29 U.S.C. § 2104(b).
4. Other than the alleged WARN violation of closing the facility in advance of WARN's sixty (60) day notice requirement, Plaintiffs cite nothing in their complaint that gives rise to any duty by Charles Town to compensate Plaintiffs for the period subsequent to the closing of Charles Town. Plaintiffs rely solely upon the alleged WARN violation to provide a wage nexus upon which a Wage Payment claim is allegedly implicated.

5. Because Plaintiffs' claim is predicated solely upon the alleged WARN violation, and because remedies for WARN violations are limited to only those remedies set forth in WARN, Plaintiffs' claim which seeks state Wage Payment remedies for the alleged WARN violation fails to state any claim upon which relief may be granted.
6. The Wage Payment and Collection Act applies to "wages" which are defined as "compensation for labor or services rendered by an employee ...." WARN's statutory remedial payments are not compensation for labor or services rendered by an employee. Thus, Wage Payment does not apply to WARN's statutory remedial payments.
7. Claims seeking employer liability for alleged WARN violations are properly filed in federal district court.

In their briefs and in oral argument before this Court, the parties addressed all of the findings made by the circuit court. As noted above, because we base our decision here on whether WARN Act payments are wages under the WPCA, we find it unnecessary to discuss the circuit court's other findings.

cate that withholding taxes and other payroll withholdings were made from the WARN Act payment. Finally, according to the appellants, the underlying policy of the WPCA is to provide for the timely payment of wages so that employers will not take advantage of vulnerable employees suddenly separated from their employment. Therefore, the appellants contend this is a statute that requires literal construction and application. *Citing Jones v. Tri–County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988).

The appellee, along with *amicus curiae* in a brief to this Court,[4] argues that the statutory language of the WPCA precludes recovery in this case. According to the appellee, the back pay remedy pursuant to the WARN Act is not compensation for labor or services rendered, as "wages" are defined in the WPCA, but a form of damages owed only in the event of an adjudication and finding of liability. The appellee cites several cases in support of its position.

We agree with the appellee. As noted previously, W.Va.Code § 21–5–4(b), (c) and (d) provide specific time periods in which an employer must "pay an employee's wages" in full after the employee's discharge, resignation, suspension, or lay off. We need look no further than W.Va.Code § 21–5–1(c) (1987) to find that

> [t]he term "wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation. As used in sections four, five, eight-a, ten and twelve [§§ 21–5–4, 21–5–5, 21–5–8a, 21–5–10 and 21–5–12], of this article, the term "wages" shall also include then accrued fringe benefits capable of calculation and payable directly to an employee[.]

The next step in our analysis is to determine the nature of WARN Act payments, that is, whether these payments are wages under the WPCA. According to 29 U.S.C. § 2102, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order" to representatives of the affected employees or, in the absence of representatives, each affected employee, and the State dislocated worker unit. 29 U.S.C. § 2104 states in part:

> (1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—
>
> > (A) back pay for each day of violation at a rate of compensation not less than the higher of—
> >
> > > (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
> > >
> > > (ii) the final regular rate received by such employee. . . .
>
> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, . . . .

In determining the nature of the payments described in section 2102, we are not persuaded by the WARN Act's description of these payments as "back pay" because we do not find it helpful in deciding whether the payments are wages under the specific language of our WPCA. For the same reason, we find the use of the term "wages" to describe WARN Act payments in a letter from the president of Charles Town Races, Inc. to be unpersuasive.

We have, however, found several cases from other jurisdictions dealing with similar issues instructive. Federal courts that have considered the issue have generally recognized that the term "back pay" in the WARN Act refers to damages for violating the Act and not compensation for past services. In *United Steelworkers v. North Star Steel,* 5 F.3d 39 (3rd Cir.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994), the Court of Appeals for the Third Circuit was asked to determine the number of days an employer must pay damages to its aggrieved employees under Section 2104(a)(1)(A) of the WARN Act—each day of

---

**4.** An *Amicus Curiae* brief was filed with this Court on behalf of the appellee by the West Virginia Chamber of Commerce.

the violation period or only those days which would have been regular work days for the employees. Using commonly accepted rules of statutory construction, the court held that the employer must pay damages for each calendar day of the violation period. This holding was based on the court's conclusion that the term "back pay" in the WARN Act does not mean lost earnings but is used "simply as a label to describe the daily rate of damages payable." *United Steelworkers,* 5 F.3d at 43. In the case of *United Paperworkers Local 340 v. Specialty Paperboard,* 999 F.2d 51 (2nd Cir.1993) the proper statute of limitations for an action brought under the WARN Act was at issue.[5] The district court adopted Vermont's six-year statute of limitations for civil actions instead of the six-month statute of limitations found in the National Labor Relations Act favored by the employer. The Court of Appeals affirmed, stating:

> Although damages are measured as two months pay and benefits, the WARN claim is not a claim for backpay [sic] because it does not compensate for past services .... As the district court noted in this case, "WARN Act damages compensate an employee for the injuries caused by his or her improper termination, much akin to either an action for wrongful discharge or severance pay[.]"

*United Paperworkers,* 999 F.2d at 55 (citation omitted).

Several courts in other states have agreed with these assessments. In *Georgia–Pacific v. Unemployment Comp. Bd.,* 157 Pa. Cmwlth. 651, 630 A.2d 948 (1993), the Commonwealth Court of Pennsylvania dealt with the issue of whether WARN Act payments are remuneration within the meaning of that state's unemployment compensation law so that receipt of WARN Act payments would preclude a claimant from receiving unemployment compensation benefits. The court first determined that the term "remuneration" in the unemployment compensation act is defined as "payment for services performed." *Georgia–Pacific,* 157 Pa. Cmwlth. at 664, 630 A.2d at 955. Concerning the

nature of WARN Act payments, the court stated:

> The WARN payment is not intended as a means of replacing lost wages; rather, it is "to provide an incentive and a mechanism for employers to satisfy their obligations to their employees in the event they fail to provide 60 days advance notice [of plant closure] to their employees." H.R.Rep. No. 576, 100th Cong., 2nd Session at 1053 (1988), *reprinted in* 1988 U.S.C.C.A.N.2078, 2086. WARN payments then are damages owed employees for suffering an unexpected employment loss where they had a rightful expectation of continued employment with that employer.

*Id.,* 157 Pa. Cmwlth. at 667, 630 A.2d at 956–957 (footnote omitted). The court further explained:

> The enforcement provisions of the WARN Act, in requiring the employer to tender back pay to employees in order to vindicate its violation of WARN, bases that reparation on the amount of an aggrieved employee's wages as a convenient and logical measure of damages. **However, merely because wage amounts form the basis for the formula by which to calculate the WARN payments, those payments are not lost wages; they are damages owed for violation of WARN's notice requirements.** Congress expressed this intent through the clear statutory language in WARN's liability provisions by requiring a violating employer to be liable to an aggrieved employee for "back pay" multiplied by the number of days of violation, not the actual number of days of lost wages.

*Id.,* 157 Pa. Cmwlth. at 669, 630 A.2d at 957 (footnote omitted). This is in accord with *Stone Forest Industries, Inc. v. Bowler,* 147 Or.App. 81, 934 P.2d 1138 (1997) where the Court of Appeals of Oregon considered whether WARN Act payments constitute wages under Oregon's workers' compensa-

---

**5.** Because the WARN Act does not contain a statute of limitations, the district court sought to borrow the statute of limitations from the most analogous state cause of action according to the

United States Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

tion law. The court noted that several courts have determined that WARN Act payments are not wages under unemployment compensation laws which often define the term "wages" in a similar fashion to workers' compensation laws. *Citing Georgia–Pacific v. Unemployment Comp. Bd., supra.* The court concluded that WARN Act payments are damages for failure to give the notice of plant closure required by the WARN Act and not compensation for services.

 We agree with the reasoning in the above cases, and we adopt this reasoning in the instant case.[6] There is no dispute that the appellants did not work from January 6, 1995 to January 14, 1995. The appellants received payments for this time period solely because of the requirements found in the WARN Act. WARN Act payments are not compensation for services rendered but are damages designed to compensate employees for an employer's failure to provide the required sixty days' notice prior to closure. The WPCA, on the other hand, only applies to "wages," that is, "compensation for labor or services rendered." Therefore, we find that back pay damages paid pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101—2109 (1988), do not constitute wages as defined by the West Virginia Wage Payment and Collection Act, W.Va.Code §§ 21–5–1 to 21–5–18, so that the time limitations governing the payment of wages in W.Va.Code § 21–5–4(b), (c) and (d) (1975) do not apply to payments made pursuant to the Worker Adjustment and Retraining Notification Act.

## IV.

## CONCLUSION

Accordingly, we affirm the order of dismissal of the circuit court.

Affirmed.

**6.** As noted above, in support of their position that WARN Act payments are wages within the meaning of the WPCA, the appellants cite *Labor and Indus. Relations Com'n v. Division of Employment Sec.,* 856 S.W.2d 376 (Mo.App. E.D. 1993) and *Washington v. Aircap Industries, Inc.,* 860 F.Supp. 307 (D.S.C.1994). *Labor and Indus. Relations Com'n.* holds that WARN Act payments are wages under Missouri's employment security law. However, that case has been criticized for failing to "sufficiently consider that WARN payments are Congressionally imposed damages, not

Chief Justice DAVIS and Justice McCUSKEY, deeming themselves disqualified, did not participate in the decision in this case.

Judge FRED RISOVICH, II, sitting by special assignment.

RISOVICH, Judge, dissenting:

(Filed Oct. 20, 1999)

I respectfully dissent from the majority's conclusion that back pay paid pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101—2109 (1994), does not qualify as "wages" under the West Virginia Wage Payment and Collection Act ("WPCA"), West Virginia Code § 21–5–1 to –18 (1996 & Supp.1999). Based on this determination that the provisions of the WPCA do not apply under the facts of this case, the Appellants were prevented from receiving liquidated damages for their former employer's failure to timely pay them for eight days worth of wages that would have been earned had Charles Town Races not prematurely closed its facility before the expiration of the sixty-day period of notice required by federal law.[1] *See* W. Va.Code § 21–5–4(e) (providing for payment of liquidated damages when employer fails to comply with provisions of WPCA).

Under the definitions set forth in the WPCA, the term "wages" is defined to include "then accrued fringe benefits capable of calculation and payable directly to an employee." W. Va.Code § 21–5–1(c)(1996). The term "fringe benefits" is further defined by the WPCA as "any benefit . . . which is required by law." W. Va.Code § 21–5–1(l). The majority completely overlooks the alter-

contractual compensation for services, past or present." *Stone Forest Industries,* 147 Or.App. at 88, n. 6, 934 P.2d at 1141, n. 6. We agree with this criticism. Further, we simply are not persuaded by the reasoning in *Washington.*

**1.** While the Appellants did in fact receive remuneration for the eight-day period when the facility was prematurely closed, they were not sent such payment until more than two months following the facility's closure.

nate definitional components of the term "wages," preferring instead to focus solely on "wages" as being limited to "compensation for labor or services rendered." W. Va.Code § 21–5–1(c). In defining the term "wages," however, the Legislature clearly delineated that with reference to the WPCA statutory provision that permits liquidated damages (W. Va.Code § 21–5–4), *inter alia*,[2] the term "wages" also includes "then accrued fringe benefits." W. Va.Code § 21–5–1(c). Since back pay awards are required by law pursuant to WARN, they constitute fringe benefits within the purview of the WPCA. *See* W. Va.Code § 21–5–1(*l*). As such, the fringe benefit of WARN back pay falls within the definitional ambit of "wages" under the WPCA, which in turn invokes the liquidated damages provisions of the WPCA. *See* W. Va.Code § 21–5–4(e).

Moreover, as this Court recognized in *Clendenin Lumber & Supply Co. v. Carpenter,* 172 W.Va. 375, 305 S.E.2d 332 (1983), our " 'Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld.' " *Id.* at 380, 305 S.E.2d at 337 (quoting *Mullins v. Venable,* 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982)); *accord Jones v. Tri–County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988). Statutes, such as the WPCA, that are designed for remedial purposes are generally construed liberally to benefit the intended recipients. *See e.g., Skaggs v. Elk Run Coal Co.,* 198 W.Va. 51, 64, 479 S.E.2d 561, 574 (1996) (recognizing that W.Va. Human Rights Act, based on its remedial nature, should be liberally construed to achieve its beneficent purposes); Syl. Pt. 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954) (holding that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof"); *City of Wheeling ex rel. Carter v. American Cas. Co.,* 131 W.Va. 584, 590, 48 S.E.2d 404, 408 (1948) (stating that remedial laws should be liberally construed); *see also Farley v. Zapata Coal Corp.,* 167 W.Va. 630, 639, 281 S.E.2d 238, 244 (1981) (observing that "[w]orking people should not have to resort to lawsuits to collect wages they have earned").

Given this undeniable and previously-articulated preference for liberal construction of the WPCA combined with the lucidly-stated definition of "wages," I disagree with the majority's determination that back pay received under WARN does not qualify as "wages" under the WPCA. *See* W. Va.Code § 21–5–1(c). Accordingly, I believe the Appellants were wrongly denied liquidated damages to which they were clearly entitled.

---

**2.** The other statutes which include an expanded definition of "wages" include W. Va.Code §§ 21– 5–5, –8a, –10, –12.