## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kevin S. Ford,**
**Plaintiff Below, Petitioner,**

**vs)  No. 15-0225** (Taylor County 13-C-60)

**GMS Mine Repair and Maintenance, Inc.,**
**Defendant Below, Respondent.**

**FILED**

**April 8, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kevin S. Ford, by counsel P. Todd Phillips, appeals the February 3, 2015, order of the Circuit Court of Taylor County denying his motion to alter or amend the grant of summary judgment to respondent. Respondent GMS Mine Repair and Maintenance, Inc. ("GMS"), by counsel William C. Means, filed its response. Petitioner also submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was employed by GMS as a coal miner. On June 21, 2013, petitioner arrived at the job site shortly before his 4:00 p.m. shift, during which time drug testing was taking place. Petitioner left the job site without informing his supervisor, though petitioner claims he left because he needed to retrieve equipment from his home that he had forgotten. However, petitioner never returned to work on that date. His supervisor called him at approximately 6:45 p.m. and left a voicemail stating that petitioner needed to turn in his equipment at the guard shack and accusing him of leaving due to the drug test. In the complaint, petitioner asserted that because GMS discharged him from employment, it was required to provide petitioner's final wages no later than seventy-two hours after discharge, but failed to do so. Following discovery, both parties filed motions for summary judgment.

On December 16, 2014, the circuit court entered an order stating it was prepared to grant summary judgment to GMS and directed counsel for GMS to submit a proposed order reflecting the same. On January 12, 2015, the circuit court entered its "Order Granting Defendant's Motion for Summary Judgment," finding that petitioner's claims fall under West Virginia Code § 21-5-4(c) and could only reasonably be construed as petitioner having "quit or resigned" from his employment. According to that order, the essence of the dispute was whether, as a matter of law, petitioner was discharged within the meaning of the Wage Payment Collection Act ("WPCA"), so as to require an expedited payment of wages. The circuit court found that there was no

1

genuine issue of material fact and that petitioner "quit or resigned" from his employment, rather than having been "discharged." In January of 2015, petitioner filed a motion to alter or amend judgment and supporting memorandum of law. By order entered on February 3, 2015, the circuit court denied that motion "for the reasons set forth in the Order Granting Defendant's Motion for Summary Judgment," which was incorporated into the order by reference. Petitioner appeals from that order.

> "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

Syl. Pt. 2, *W.Va. Dep't of Transp., Div. of Highways v. Dodson Mobile Homes Sales and Serv., Inc.*, 218 W.Va. 121, 624 S.E.2d 468 (2005). This Court has indicated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995) (citing Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)).

In this case, petitioner asserts two assignments of error, which have a great deal of overlap. First, he argues that the circuit court erred by denying his motion for summary judgment on his WPCA claim and in denying his motion to alter or amend judgment when the only issue was whether petitioner had been discharged from his employment with GMS, within the meaning of the WPCA, or if petitioner had voluntarily quit or resigned his employment. In support of his claim that he had been discharged from employment, petitioner asserts that the undisputed evidence presented to the circuit court demonstrated that (a) GMS left a voicemail message for petitioner instructing him to turn in his equipment in the guard shack and retrieve his final paycheck; (b) petitioner understood the message he received to communicate that he had been fired; and (c) GMS understood that it had taken action to fire and discharge petitioner and that such termination was not voluntary.

Petitioner's second assignment of error relates to at-will employment contracts and their application under the WPCA. Petitioner argues that termination of an at-will employment contract by the employee can only occur as a result of a willful or intentional act on the part of the employee intending or having the effect of terminating the employment relationship. However, he contends that the circuit court's ruling has the effect of invalidating that law. He asserts that no evidence was presented that petitioner engaged in any act to voluntarily quit or resign his employment with GMS. He further argues that because he was terminated by GMS, it was required to pay petitioner his wages due within seventy-two hours. Therefore, he asserts that he is entitled to liquidated damages in the amount of $5,490.

It is well settled that "''[t]he West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." Syllabus, *Mullins v. Venable,* 171 W.Va. 92, 297 S.E.2d 866 (1982).' Syl. Pt. 3, *Jones v. Tri-County Growers, Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988)." Syl. Pt. 3, *Lipscomb v. Tucker Cnty. Comm'n,* 206 W.Va. 627, 527 S.E.2d 171 (1999). Therefore, "[s]tatutes, such as the WPCA, that are designed for remedial purposes are generally construed

2

liberally to benefit the intended recipients." *Conrad v. Charles Town Races, Inc.,* 206 W.Va. 45, 51, 521 S.E.2d 537, 543 (1998) (citations omitted). When an employer fires an employee, the employer "shall pay the employee's wages in full within seventy-two hours." W.Va. Code § 21-5-4(b) (1987).

Petitioner correctly argues that the WPCA does not define "discharge," though the West Virginia Code of State Rules applicable at that time defines it as "any involuntary termination or the cessation of performance of work by employee due to employer action." W.Va. C.S.R. § 42-5-2.8 (1990). He asserts that GMS intended to discharge his employment and that action is consistent with GMS's policies regarding employees failing to report for their respective shifts and employees who are perceived to have refused a drug test.

GMS argued below, and the circuit court agreed, that because petitioner did not return for his shift and did not notify the supervisor as to his absence, petitioner's actions constituted a voluntary termination of employment with GMS. As this Court previously recognized, "what controls when the final pay is due as set forth in subsections (b), (c) and (d) of West Virginia Code § 21-5-4 is whether an employee is (1) fired, (2) quits, or (3) is laid off . . . ." *Lehman v. United Bank, Inc.*, 228 W.Va. 202, 205. 719 S.E.2d 370, 373 (2011). In the instant case, both parties submitted motions for summary judgment based on undisputed facts, including the facts that petitioner voluntarily left the job site, he did not report the reason for his absence to GMS, and he did not return to the site for at least two hours and forty-five minutes after his shift began. It is also undisputed that he did not undergo drug testing with his co-workers on June 21, 2013, at the job site. For these reasons, based on the specific facts and the record before this Court, we find that the circuit court did not err in granting summary judgment to GMS.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: April 8, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING AND WRITING SEPARATELY:**

Justice Robin Jean Davis
Justice Margaret L. Workman

Workman, Justice; joined by Davis, Justice, dissenting:

3

Petitioner, Kevin S. Ford, a coal miner, went to work and then left his job prior to his shift beginning at 4:00 p.m. without notifying his supervisor. Petitioner's employer, Respondent GMS Mine Repair and Maintenance, Inc., claims that Petitioner left because drug testing was taking place during Petitioner's shift. Conversely, Petitioner maintains he left because he needed to retrieve equipment from his home that he had forgotten. Whatever the reason for Petitioner's leaving the jobsite prior to his shift beginning, the issue is whether Petitioner was discharged from his employment by Respondent or whether Petitioner voluntarily quit or resigned.

The evidence before the circuit court concerning this issue was a voicemail message left for Petitioner by his supervisor at 6:45 p.m., the day Petitioner left the jobsite. In that message, the supervisor told Petitioner the following:

> "Hey, Kevin Ford, this is Chris Naternicola. Uh, the reason why you did leave is because you knew that you had a drug test. You need to turn in all your equipment at the guard shack. Hear this [we can/can't (*uncertain*)] (*inaudible*) receive your final paycheck. If you want, give me a call back."

Thus, Petitioner was instructed by his supervisor to turn in all his equipment at the guard shack and the supervisor made reference to "receiv[ing] . . . [Petitioner's] final paycheck." The supervisor also accused Petitioner of leaving the jobsite due to the drug test. Based upon this evidence, the circuit court determined that there were no issues of material fact and that Petitioner "quit or resigned" from his employment and was not discharged. Thus, the circuit court granted Respondent summary judgment because Petitioner's "discharge" from Respondent's employment under the WPCA was not an "involuntary termination or the cessation of performance of work by employee due to employer action." W. Va. C.S.R. § 42-5-2.8 (1990). This determination precluded Petitioner's claim under the West Virginia Wage Payment Collection Act ("WPCA"), that his final wages be paid within seventy-two hours after his discharge from employment.

I disagree with the majority's affirmance of the circuit court's decision in this case as the undisputed evidence of the voicemail message left by Petitioner's supervisor is a clear directive that Petitioner was to bring all his equipment back to the guard shack. Moreover, there is reference to Petitioner receiving a *final paycheck*. The supervisor also accused Petitioner of leaving due to the drug testing when there was absolutely no basis to support such an accusation. This evidence fails to demonstrate that Petitioner "quit or resigned." Instead, the evidence before the circuit court supported a determination that Petitioner was fired from his job and should have received his final paycheck within seventy-two hours.

Therefore, I respectfully dissent and am authorized to state that Justice Davis joins me in this dissenting opinion.

4